## PATTI ZIGAN v. LILLIAN LeBLANC.[1]

May 11, 1934.

No. 29,805.

*Ryan, Ryan & Ryan,* for appellant.
*Fryberger, Fulton & Boyle,* for respondent.

[1]Reported in 254 N. W. 810.

*HILTON, Justice.*

Action by plaintiff against the executrix of her father's estate to recover possession of a certificate of deposit and funds acquired by the executrix on another certificate of deposit. The case was tried to the court without a jury, which ordered judgment for plaintiff. From the judgment so entered this appeal was taken.

Plaintiff and Lillian LeBlanc (hereinafter for convenience referred to as defendant) are sisters and the daughters of one O. B. Hamelin, who died testate on September 15, 1932. His will was made on May 26, 1932. In it, after leaving a few lots in Duluth to a third daughter and to plaintiff and to defendant each a dwelling house in Brainerd of about equal value, he left all his personal property to plaintiff and defendant share and share alike.

On November 5, 1932, plaintiff and defendant (executrices) were present in the First National Bank of Brainerd when decedent's safety deposit box therein was opened, and in it were discovered two certificates of deposit, each for $2,500, issued by that bank to Hamelin and plaintiff, "payable to either of them or payable to the survivor (joint owners) or order." One of the certificates was at that time indorsed by both plaintiff and defendant and the proceeds, after payment to the bank of $332.04 due on a note which decedent had indorsed for the accommodation of plaintiff's husband, was deposited in that bank to the account of the estate. The other certificate was left in the deposit box in the custody of the executrices. Thereafter plaintiff and defendant, acting as executrices of the estate, filed an inventory and jointly disbursed part of the cash in payment of certain expenses of the estate. Plaintiff was at the time of the opening of the safety deposit box advised by an attorney present that the certificates belonged to the estate. Later she consulted her present counsel and was advised that both certificates belonged to her. She thereupon resigned as executrix and commenced this action.

The certificates in question were issued May 23, 1932, and were renewals of previous certificates in the same form issued on September 30, 1931, which in turn were renewals of two like certificates issued May 23, 1931; these two were renewals of two certificates

which were in the name of Hamelin alone. Neither plaintiff nor defendant knew about the certificates of deposit or ever had possession thereof until after their father's death.

The trial court found as facts:

"That the decedent made said deposits and caused said certificates to be issued in the manner and form aforesaid, with the intention of making a gift to the plaintiff and said decedent intended, at the time he made said deposits, that plaintiff should have the right, during his lifetime, to withdraw the same from said bank and that said deposits should be the absolute property of said plaintiff at the time of his death.

         *     *     *     *     *     *

"That plaintiff was, upon the death of said decedent, the sole owner of said certificates of deposit and entitled to possession thereof and said plaintiff is now the owner and entitled to the possession of said certificate of deposit No. A8745 and of the funds obtained by cashing said certificate of deposit No. A8746 less the amount of said check made to said bank in payment of said note ($2,537.50 minus $332.04 equals $2,205.46) and neither said certificate of deposit nor said funds are part of the estate of said decedent."

The court's conclusions of law being in accord with the findings of fact, judgment was ordered for plaintiff. The assignments of error call in question the sufficiency of the evidence to justify the above findings; assert that the conclusions of law are not justified or supported by the findings of fact; and that the judgment is not supported by the evidence and is contrary to law.

Hamelin at one time lived in Brainerd and was a customer of the bank. His wife predeceased him 11 years. During that time he lived with plaintiff nine years and two years with defendant. While so living he paid the one with whom he was staying $20 or $25 per month. In 1926 plaintiff and decedent moved to Duluth, and the latter continued to live with her. He went back to Brainerd about twice a year to look after business matters with the bank. When at Brainerd he stayed at the home of a Mrs. John F. Hurley, with whom he was well acquainted. Plaintiff's husband had been ill

for several years. He had a serious operation in April, 1930, and another one about a year later. On his first trip to Brainerd after Zigan's second operation decedent had the two certificates of deposit issued by the bank in the name of plaintiff and himself in the form and manner as were the renewals thereof, including the ones here involved. The assistant cashier of the bank, A. C. Mraz, told decedent that such certificates could be cashed by either of the joint owners whenever the same were presented to the bank for payment, and that the deposits would be paid to the survivor upon the death of one of the joint owners. Upon receiving that information decedent told Mr. Mraz that was the way he wanted it. On the same trip to Brainerd, in May, 1931, decedent talked with Mrs. Hurley about Mr. Zigan's health and stated that Zigan was not at all well; that he (Hamelin) was worried about Patti; that she had small children to raise and that it would not be possible for her to support herself and her children as his other children could support theirs if necessary. He further stated: "She will never want. I will see to that."

Since 1926 decedent had had a savings account with the Pioneer National Bank of Duluth. On November 1, 1930, he had a conversation with the cashier of that bank, at which time he made arrangements to authorize his daughters (plaintiff and defendant) to withdraw funds from the account and to have the residue of his account with the bank paid to those daughters at his death. The bank card was made out in proper form for signature by the joint owners (three) so that the account became a joint one, payable to either or survivor. The Duluth banker explained to him that funds might be drawn by either of the three or by the survivor.

2 Mason Minn. St. 1927, § 7711, reads:

"Whenever any deposit shall be made by or in the names of two or more persons upon joint and several account, the same or any part thereof and the dividends or interest thereon may be paid to either of such persons or to a survivor of them or to a personal representative of such survivor."

This statute is of long standing in Minnesota. It is claimed that it was only for the protection of a bank making payments on joint

deposits. However, in Dyste v. Farmers & M. Sav. Bank, 179 Minn. 430, 435, 229 N. W. 865, 867, it was stated:

"This statute protects the bank in making such payments. It also recognizes that making a deposit in that manner gives to each of the persons named the right to make withdrawals therefrom and gives to the survivor the right to withdraw the residue.

"From the fact that the statute authorizes the payment of the residue to the survivor or to the personal representative of such survivor, a presumption arises that such residue is the absolute property of the survivor, and casts upon those who claim otherwise the burden of proving that such was not the intention of the donor."

In Hall v. Johnson, 179 Minn. 428, 429, 229 N. W. 867, 868, that presumption was again recognized, and this court said:

"Aside from the evidence, the verdict has the support of the presumption arising from statute (G. S. 1923 [2 Mason Minn. St. 1927] § 7711) that the residue of the joint deposit was the 'absolute property of the survivor.'"

We cannot approve of the suggestion that these cases should be overruled. Under similar statutes the courts of Michigan and New York have reached a like conclusion. In re Rehfeld's Estate, 198 Mich. 249, 164 N. W. 372; Clary v. Fitzgerald, 140 N. Y. S. 536; affirmed 213 N. Y. 696, 107 N. E. 1075; Havens v. Havens, 126 Misc. 155, 213 N. Y. S. 230; Kelly v. Beers, 194 N. Y. 49, 86 N. E. 980, 128 A. S. R. 543.

In the instant case the presumption maintains that Hamelin intended to make, and did make, a gift to plaintiff of the certificates of deposit in question. There is evidence that clearly strengthens that presumption. Hamelin knew from his experience at the Duluth bank what the effect of a joint deposit in favor of two or more persons and to the survivor meant. He was also informed thereof by an officer of the Brainerd bank, to whom he stated what his purpose was. The reason for the provision made for plaintiff was stated to Mrs. Hurley to be the necessities of plaintiff's situation. The above quoted findings of the trial court had abundant support in the evi-

dence. The circumstance that plaintiff never had possession of the certificates is of no consequence.

"Where a depositor in fact intends to make a gift, and makes a deposit payable to himself or the donee for the purpose of giving effect to that intention, it vests in the donee a present interest in the fund which will sustain the gift as valid. * * * And where both donor and donee have the right to make withdrawals it is immaterial whether one or the other has possession of the pass book." Dyste v. Farmers & M. Sav. Bank, 179 Minn. 430, 434, 229 N. W. 865.

Affirmed.