**CASHMAN v. MASON et al.**
No. 13625.

Circuit Court of Appeals, Eighth Circuit.
March 11, 1948.

694

G. W. Horsley, of Springfield, Ill. (Russell M. Carlson, of St. Paul, Minn., on the brief), for appellant.

C. E. Warner, of Minneapolis, Minn., for appellee Ellsworth Mason.

Grant W. Anderson, of Minneapolis, Minn., for appellee Northwestern Nat. Bank & Trust Co. of Minneapolis.

Before SANBORN, JOHNSEN, and RIDDICK, Circuit Judges.

RIDDICK, Circuit Judge.

Edith Cole Cashman, a resident of Illinois, brought this action against Ellsworth Mason and the Northwestern National Bank and Trust Company of Minneapolis, residents of Minnesota, to recover the money on deposit in the bank on September 30, 1943, in two accounts which on the date mentioned were carried on the books of the bank as joint accounts in the name of Mrs. A. W. Ross or appellant. Appellant claims ownership of the funds on deposit as donee of Mrs. Ross. The liability of appellees is predicated on the charge that the bank wrongfully delivered appellant's property to Mason.

In 1941 Mrs. A. W. Ross was an elderly widow living in Minneapolis. She was in ill health and subject to periodic attacks of illness which incapacitated her for some time. Among her relatives were a niece, Edith M. Cole, now Edith Cole Cashman, then living in Springfield, Illinois, where she was employed as a stenographer, and a brother, Ellsworth Mason. In June 1941 Edith Cole came to Minneapolis to visit Mrs. Ross. Either shortly before or after the arrival of Edith M. Cole in Minneapolis Mrs. Ross told a public accountant who looked after tax matters for her and for a business concern in Minneapolis which she controlled that since she had no children she wanted to make Edith M. Cole her "heir apparent", and that for this purpose she was going to have her bank accounts placed in the joint names of herself and Edith M. Cole. At this time Mrs. Ross was the owner of two deposits in the Northwestern National Bank and Trust Company of Minneapolis, one a savings deposit and the other a checking account.

On July 12, 1941, Mrs. Ross had $1,048.13 on deposit in her savings account and $11,-654.67 in her checking account. On that day she and Edith M. Cole went to the bank, where Mrs. Ross directed the bank to change the title of the accounts from "Mrs. A. W. Ross" to "Mrs. A. W. Ross or Edith M. Cole." At the time this change was made Mrs. Ross and appellant signed the following agreement with the bank for the savings deposit:

"The funds deposited in this account are the joint property of the undersigned, and the bank may discharge its obligation for the same by payment to or upon the written order of either, or to the survivor of the undersigned without reference to the ownership of the funds deposited."

The contract signed by Mrs. Ross and appellant for the checking account contained the following provision:

"All funds now or hereafter deposited in said account by either or any of the depositors shall be the property of the depositors jointly with the right of survivorship. Each depositor shall have complete and absolute authority over said account during the joint lives of the depositors and may withdraw all or any part of such funds on checks or other withdrawal orders signed by either or any of the depositors and by the survivor or survivors in case of death of any thereof."

In January 1942 the appellant came to Minneapolis to live in the home of Mrs. Ross. While there she was first employed as a stenographer at a salary of $25 a week by the business concern which Mrs. Ross controlled, and was later promoted to vice president at a salary of $100 a week. She continued to live with her aunt until January 1943 when some friction developed between them, probably caused by the fact that both were in ill health. That month

she left the home of Mrs. Ross, but continued to reside in Minneapolis until April 1943 when she resigned her position of vice president in the Ross business and returned to her home in Illinois.

After appellant left Mrs. Ross's home in January 1943 there was only the most casual contact or association between them. From July 1941 until September 30, 1943, Mrs. Ross continued to make deposits and withdrawals from both of the bank accounts. Edith Cole never deposited any money in either account and never made any withdrawals from either account by checks signed by her. She never asserted any right of control over or interest in the deposits until after the death of Mrs. Ross. On the other hand, she had a separate bank account in her own name in which she deposited her earnings. While living with Mrs. Ross she drew a few checks on the joint checking account all of which were signed "Mrs. A. W. Ross by Edith M. Cole." These checks were apparently for payment of obligations incurred by Mrs. Ross.

On September 30, 1943, Mrs. Ross went to the bank and made arrangements to change the title of the joint checking account which still remained in the name of herself or Edith M. Cole. This was accomplished by written order given to the bank as follows:

"You are instructed to change the title of the account now carried on your books as: Mrs. A. W. Ross or Edith M. Cole to Mrs. A. W. Ross or Ellsworth Mason.

"All outstanding checks drawn as against the account as formerly carried are to be charged against the present account."

In compliance with this written order the checking account was changed by the bank as directed, and was thereafter carried in the name of Mrs. Ross or Ellsworth Mason until the death of Mrs. Ross on May 9, 1945. On September 30, 1943, the checking account reflected a balance of $6,339.95.

On the same day on which the checking account was changed in the manner stated, Mrs. Ross executed a written savings withdrawal slip withdrawing the entire balance on deposit in the savings account in the sum of $10,958.06 and redeposited the funds so withdrawn in a new savings account which she opened in the name of Mrs. A. W. Ross or Ellsworth Mason. Thereafter, Mrs. Ross continued to make deposits in and withdrawals from both accounts. When she died on May 9, 1945, the balance in the checking account was $3,822.41 and in the savings account the balance on deposit was $20,819.71.

Throughout the period in which the bank accounts remained in the name of Mrs. Ross or Edith M. Cole, Mrs. Ross retained possession of the bank books. The bank had no knowledge of any circumstance which would indicate that the appellant claimed any vested interest in the deposits, nor did appellant serve any notice on the bank not to allow withdrawal orders by Mrs. Ross. All funds on deposit in the accounts were withdrawn by Ellsworth Mason shortly after the death of Mrs. Ross.

In addition to the findings just stated, all either undisputed in the evidence or supported by ample proof, the district judge found that the bank accounts in the names of Mrs. Ross and appellant were opened and maintained solely for the convenience of Mrs. Ross; that Mrs. Ross was the real owner of all funds on deposit in the accounts; that she at all times retained the right to change the accounts or to withdraw the funds on deposit in the accounts; that she exercised this right on September 30, 1943, when she gave written directions to the bank to change the name of the checking account to Mrs. A. W. Ross or Ellsworth Mason and when she withdrew the savings account and redeposited the funds withdrawn in the name of Mrs. Ross or Ellsworth Mason; and that she never intended a gift to appellant of an irrevocable interest in the bank accounts. On these findings the court concluded that no gift of an interest in the bank accounts from Mrs. Ross to appellant was made, and that the bank for this reason, as well as because of its contracts with Mrs. Ross and appellant and under the applicable Minnesota statute, was with-

in its rights in permitting Ellsworth Mason to withdraw all funds on deposit after the death of Mrs. Ross.

█ It is obvious from the foregoing statement that the judgment of the district court must be affirmed, unless the court's findings that Mrs. Ross never intended to make a gift of the bank accounts and never surrendered control of the supposed subject of the gift are without substantial support in the evidence or were induced by an erroneous view of the law. And, in considering whether the findings of the district court were clearly erroneous, appellees on this appeal must be given the benefit of all favorable inferences which reasonably may be drawn from the evidence. Waltz v. Ellinghouse, Executrix, 8 Cir., 165 F.2d 596.

█ In Minnesota the requisites of a valid gift inter vivos are delivery, intention to make a gift on the part of the donor, and absolute disposition of the subject of the gift. Owens v. Owens, 207 Minn. 489, 496, 292 N.W. 89, 93, quoted with approval in Laura Baker School v. Pflaum, Minn., 30 N.W.2d 290. The burden is upon the party claiming as donee to prove every element essential for the consummation of the gift by clear and convincing evidence. "A mere unexecuted purpose resting only in the intent to make delivery at some time in the future is ineffectual" to establish a gift. Quarfot v. Security National Bank & Trust Co., 189 Minn. 451, 249 N.W. 668, 669. In the Quarfot case it is said that proof of the fundamentals of a gift is of the highest importance when it is claimed that the gift was made by a person subsequently deceased, the court saying:

"It is easier to fabricate a story than to get possession of another's property." 249 N.W. 670.

And in the Pflaum case it was held that, where a donor, although intending at one time to make a gift, did not completely part with dominion over the subject of the gift, but exercised the power of revocation before delivery, no valid gift was made. The same thought is expressed in the Quarfot case in the following language:

"It has long been the law that, where the efficacy of the delivery in a case of this character is dubious, the donative intent not clear, and the donor resumes the possession, there is no gift." 249 N.W. 670.

Appellant relies on Dyste v. Farmers and Mechanics Savings Bank, 179 Minn. 430, 229 N.W. 865; McLeod v. Hennepin County Savings Bank, 145 Minn. 299, 176 N.W. 987; and Zigan v. LeBlanc, 191 Minn. 538, 254 N.W. 810, as authority for the statement that where an owner deposits money in a bank to the account of himself and another, with the provision that either may withdraw the deposit or any part of it and that upon the death of one it should belong to the survivor, a gift inter vivos of a present interest in the bank account is established under Minnesota law. These cases deal with actions which arose between a supposed donee and the executor of the estate of the supposed donor, or between the surviving depositor and the bank. The following language from the opinion in the Dyste case, 229 N.W. at page 866, will suffice to show that appellant's interpretation of the cases is incorrect.

"This court, in common with the majority of courts, considers such deposits as in the nature of gifts and governed by the rules applicable to gifts. McLeod v. Hennepin County Savings Bank, 145 Minn. 299, 176 N.W. 987. The courts which adopt the gift theory agree that the decisive question is whether the depositor made the deposit with the intention of making a gift, or made it for convenience or to serve some purpose of his own. They differ as to the circumstances from which an intention to make a gift may be inferred; but are nearly unanimous in holding that, where a depositor in fact intends to make a gift, and makes a deposit payable to himself or the donee for the purpose of giving effect to that intention, it vests in the donee a present interest in the fund which will sustain the gift as valid."

It is important to note that the court emphasizes the necessity of intention to make a gift on the part of the supposed donor as essential to the vesting in the other

party of a present interest in the fund deposited.

 In common with many of the States, Minnesota has a statute, § 48.30, Minnesota Statutes 1945 and M.S.A., relating to deposits of the character under discussion, which provides that the bank is protected in paying to either party during the lives of both of them, and on the death of one is entitled to pay the residue of the fund on deposit to the survivor. The effect of the statute is to create a rebuttable presumption that the residue of the deposit is the absolute property of the surviving party, who takes as a donee. 229 N.W. 866. But this presumption in favor of a gift of an interest in the deposit arises only upon the death of the supposed donor. Conversely, where, as in the present case, the supposed donor exercised during her lifetime her right to withdraw the deposits, certainly no presumption in favor of the gift can arise.

 In an effort to show the intention of Mrs. Ross to give appellant an interest in the bank accounts, appellant testified that Mrs. Ross told an officer of the bank that she wished to give the appellant "an interest in her bank account." This statement was made at the time the bank accounts were opened. The court held the evidence incompetent under section 595.04, Minnesota Statutes of 1945 and M.S.A., which provides that it shall not be competent for any party to an action to give evidence of or concerning any conversation with or admission of a deceased person relative to matters at issue between the parties. The court's ruling is supported by Sievers v. Sievers, 189 Minn. 576, 250 N.W. 574. But, if this statement could be accepted as competent evidence, it is too indefinite to have any value as proof of an intent upon the part of Mrs. Ross to vest in appellant an irrevocable interest in her bank accounts. It fails to identify the "interest" intended to be given. The contracts signed by Mrs. Ross and appellant at the time the statement was made and the subsequent conduct of Mrs. Ross and appellant in relation to the bank accounts, the best evidence of their understanding concerning

them, completely refute the inference that Mrs. Ross intended to give appellant anything more than the mere right to draw checks upon the accounts and to receive on Mrs. Ross's death any residue which may have remained in the accounts. But this "interest" was subject to revocation by Mrs. Ross, and was revoked by her in conformity with the contracts with the bank, contracts to which appellant was a party. The bank, without notice of any claim of appellant contrary to the contracts of deposit, is not liable to appellant because it permitted Mrs. Ross to exercise the rights reserved to her in these contracts.

Judgment of the district court is affirmed.