# HAROLD A. ERICKSON, ADMINISTRATOR OF ESTATE OF RUTH L. ERICKSON, v. IRMA V. KALMAN AND ANOTHER.

189 N. W. (2d) 384.

August 6, 1971—No. 42387.

*Ernest W. Erickson,* for appellant.
*Lawrence H. Sullivan,* for respondents.

Heard before Knutson, C. J., and Nelson, Murphy, Rogosheske, and Frank T. Gallagher, JJ.

KNUTSON, CHIEF JUSTICE.

This is an appeal from an order of the District Court of Hennepin County denying plaintiff's motion for amended findings or, in the alternative, for a new trial. Plaintiff, as administrator of the estate of Ruth Erickson, his wife, had claimed a half interest in certain savings accounts which his wife had held in nominal joint tenancy with her mother and her sister, the defendant herein. The essential facts of the matter are as follows:

In 1951, Hulda E. Dahlroos, mother of Ruth Erickson and Irma V. Kalman, had savings accounts in Farmers & Mechanics Savings Bank of Minneapolis and in Minneapolis Savings and Loan Association (now Midwest Federal Savings & Loan Association). On August 22, 1951, by written agreements with the institutions, Hulda Dahlroos, together with her daughters, signed documents establishing joint ownership of the accounts by the three.[1] On August 3, 1954, Hulda Dahlroos, together with her

---

[1] The agreements were in the following language:

"JOINT AND SEVERAL ACCOUNT AGREEMENT

"We agree with The Farmers and Mechanics Savings Bank of Minneapolis, that the above numbered account in said bank, including all present and future balances therein is our joint and several account subject to the rules and regulations of said bank, payable to any of us or to the survivor of us or to the personal representative of such survivor.

/s/   Mrs. Hulda Dahlroos
/s/   Irma V. Kalman
/s/   Ruth L. Erickson"

"AGREEMENT FOR JOINT STOCK ACCOUNT NO. 13108-6

"The undersigned   Mrs. Hulda Dahlroos
                   Irma V. Kalman
and                Ruth Erickson

hereby agree, each with the other, and with the Minneapolis Savings and Loan Association, that the funds herewith invested and all funds hereafter invested in the above numbered Stock Account are so invest-

daughter Irma Kalman, caused to be placed in a joint and several account the savings account which Hulda Dahlroos held at First Bloomington Lake National Bank of Minneapolis.

On December 7, 1965, Hulda Dahlroos died intestate. At that time, the foregoing accounts contained the following amounts: $5,873.40 (Farmers & Mechanics); $11,477.73 (Minneapolis Savings); and $229.76 (Bloomington Lake). At the time of Hulda's death, both daughters survived her; but on the same day, a few hours after the death of Hulda, her daughter Ruth died intestate.

On May 17, 1966, Irma Kalman was appointed administratrix of the estate of her deceased mother, Hulda Dahlroos, and on July 18, 1966, plaintiff was appointed administrator of the estate of his wife, Ruth Erickson.

As administrator of Ruth Erickson's estate, plaintiff demanded of defendant Irma Kalman, individually and as administratrix of the estate of Hulda Dahlroos, one half of the amount of the deposits in the three savings accounts. Defendant refused the demand and claimed the proceeds of those accounts as the survivor of the parties who had established them.

Plaintiff brought the present action to recover one half of each of the accounts, interest from the time of Hulda's death, and double damages under Minn. St. 525.392, which provides, in part, that if any person converts to his own use any of the personal property of a decedent's estate he shall be liable for

---

ed for the purpose of creating ownership in said Stock Account in the undersigned as joint tenants with all the rights, including the right of survivorship, incident thereto, and also hereby agree with the Association that any amounts now invested or which may be hereafter invested with the Association on this Stock Account, may be withdrawn pursuant to the rules of the Association, together with any dividends credited thereon, upon authorization signed by either of the under·signed.

| Sign Here | /s/ Ruth Erickson |
| | /s/ Hulda Dahlroos |
| Sign Here | /s/ Irma Kalman" |

double the value of the property converted. The trial court denied all relief requested by plaintiff.

The issue presented on this appeal is whether the three bank accounts described above are "joint and several" accounts within the provisions of Minn. St. 48.30, and if so, what result follows from such a determination. Although slightly different language was employed in creating the accounts, we shall treat them as essentially identical.

Minn. St. 48.30 provides in relevant part:

"* * * When any deposit shall be made by or in the names of two or more persons upon joint and several account, the same, or any part thereof, and the dividends or interest thereon, may be paid to either of these persons or to a survivor of them, or to a personal representative of the survivor."

It was the trial court's position that from the evidence it was the apparent intent of Hulda to dispose of the proceeds of the accounts to the survivor of the persons named therein.[2] In its memorandum that court indicated two bases for this decision.

First, the court stressed the "arrangements" among the parties whereby the parties "agreed" in "contract" that the survivor was to take all as evidence of "the intent of the said Hulda E. Dahlroos to dispose of the proceeds of said bank accounts to the survivor of the three named persons." That the court seemed to treat this case as one of contract is evident from its quotation from Park Enterprises v. Trach, 233 Minn. 467, 470, 47 N. W. (2d) 194, 196, wherein it was stated in reference to a "joint and several account":

"* * * [W]e are forced to treat this case as presenting a contract question and must decide what the incidents of this type of ownership are primarily by reference to the terms of the contract creating it."

---

[2] Note that only Hulda and Irma were named copayees on the Bloomington Lake account.

If the trial court was treating the case as one of contract, it was error for it to do so because this court considers deposits such as the ones before us to be in the nature of gifts and to be governed by the rules applicable to gifts. Rutchick v. Salute, 288 Minn. 258, 179 N. W. (2d) 607. However, it is unnecessary to resolve the case on this ground.

Second, in addition to the finding of "intent" which appears to be based on a "contract" view of the case, the trial court quoted from Cashman v. Mason (8 Cir.) 166 F. (2d) 693, 697, stating that there was no evidence to overcome the "rebuttable presumption that the residue of the deposit is the absolute property of the surviving party, who takes as a donee. * * * But this presumption in favor of a gift of an interest in the deposit arises only upon the death of the supposed donor."

While the above quotation is a correct statement of the rebuttable presumption of "gift" arising from Minn. St. 48.30 as first expressed by this court in Dyste v. Farmers & Mechanics Sav. Bank, 179 Minn. 430, 229 N. W. 865, and most recently followed in Rutchick v. Salute, *supra,* it is our opinion that the trial court applied the presumption erroneously in this case.

The presumption arising from § 48.30 serves a dual function. First, it operates to establish the fact of gift. Rutchick v. Salute, *supra.* Second, it operates to ascertain those persons who are to receive the proceeds of joint and several accounts upon a donor's death.

In the cases [3] which led to the statement of the presumption, there was no need to distinguish between these two aspects of the presumption because only one person was in the position of donee at the donor's death. In those cases, proceeds would go to the only possible donee—the surviving party. Here, however, two parties named as joint account holders survived the donor.

[3] Dyste v. Farmers & Mechanics Sav. Bank, 179 Minn. 430, 229 N. W. 865; Hall v. Johnson, 179 Minn. 428, 229 N. W. 867; Zigan v. LeBlanc, 191 Minn. 538, 254 N. W. 810; Brennan v. Carroll, 260 Minn. 521, 111 N. W. (2d) 229; Rutchick v. Salute, 288 Minn. 258, 179 N. W. (2d) 607.

We agree with the trial court to the extent, if any, that he upheld the validity of the Farmers and Mechanics and Minneapolis Savings accounts as "gifts." The only evidence in the record concerning these two accounts supports the presumption and the court's determination of that aspect of the case. Irma Kalman was called for examination as an adverse party under Rule 43.02, Rules of Civil Procedure, and was asked why her mother had added the names of the two daughters to the two larger accounts. She answered:

"Well, she put—put it up like that so we would not have any trouble and that we would—that the books would go to our sisters—to her daughters or this surviving daughter. That is why she had the accounts put up like that."

Later, when Irma was questioned about the purpose of adding the names of the two daughters to the two larger accounts, she stated:

"I didn't have those accounts for—as a convenient account, I had them—she had put up her accounts so if anything happened to her, that she knew where her money was at and that it would go to her daughters or to her survivor. * * *"

Shortly afterward, Irma was asked whether the daughters' names were added to the two larger accounts for the purpose of making testamentary gifts to them. She answered:

"Well, I don't know what you mean by 'testamentary gift.' What I am saying is that at the time of her death, that it would go to her daughters or to her surviving daughter. That is why she had those books drawn up like that. She did not want it to go into hands that—outside of the family."

On direct examination, when Irma was asked if she and her mother had fully discussed the significance of the joint tenancy aspect of the account before going down to the bank, she replied:

"Yes. My mother had wanted to put her daughters' names onto the accounts so there wouldn't be any trouble or any ques-

tion as to—if anything happened to her, that she wanted it set up so it would go to her daughters or to her surviving daughter."

This evidence is sufficient to uphold the validity of the two larger accounts against any contention that they were mere "convenience" accounts whereby no gift was intended.

In contrast, the evidence concerning the First Bloomington Lake account clearly indicates that this account was established only for convenience.

Since requisite donative intent was lacking as to that account, it cannot be sustained as a "gift." Dyste v. Farmers & Mechanics Sav. Bank, *supra*. Therefore, the proceeds of this account are to be distributed as a part of the estate of Hulda Dahlroos.

In applying the presumption which arises from § 48.30, the trial court obviously felt that the focus of the presumption was on the surviving party. Accordingly, the trial court placed the burden of presenting at least some evidence to meet the presumption on the representative of Ruth's estate, who claimed that the accounts here were not owned absolutely by Irma, the surviving party. This construction of the presumption is understandable because the presumption was framed with the two-party situation in mind. Dyste v. Farmers & Mechanics Sav. Bank, *supra*. However, the trial court failed to observe that the presumption arises on the death of the donor.

Minn. St. 48.30, from which the presumption arises, does not speak in terms of a single survivor. Rather, it states that proceeds of joint and several accounts "may be paid to either of these persons or to a survivor of them, or to a personal representative of the survivor." Thus, absent other circumstances, a bank may pay to "a survivor" without liability to other named joint and several account payees or their representatives. This statutory language clearly refers to *any* survivor. Any other reading of "a survivor" necessarily eliminates some of the protection for banks which the statute was intended to provide. In re Estate of Jeruzal, 269 Minn. 183, 130 N. W. (2d) 473; Dyste v. Farmers & Mechanics Sav. Bank, *supra*.

Bearing this in mind, we feel that the presumption makes the most sense when viewed as arising upon the death of the donor in favor of each of the parties to whom the bank could make payment of the jointly held funds without legal liability to the other surviving co-owners. In this case, at the instant of the donor-mother's death, there arose a rebuttable presumption that the residue in the accounts was the absolute property of the surviving parties. This included both daughters, Irma and Ruth.

The view of the presumption taken by the trial court placed the burden of offering evidence to rebut the presumption on the representative of Ruth, the deceased daughter. The burden was properly on Irma, the survivor, who claimed that the money was to go to her alone. In a case where the question is as close as the one before us, failure of the trial court to place the risk of non-presentation of evidence to rebut the presumption on the proper party is reversible error.

Normally, our determination that the risk of nonpresentation of evidence to rebut the presumption has been wrongly placed at trial would necessitate a new trial. However, on the facts of this case we see no need to remand for a new trial regarding the two larger accounts, and we reverse the trial court as a matter of law.

From our review of the record we are in accord with the assessment of the trial court that the evidence presented was not sufficient to rebut the presumption, with the qualification, overlooked by that court, that the presumption arose in favor of both Irma and Ruth. In saying this, we are aware that the presumption "disappears the moment evidence is presented negating the gift." Rutchick v. Salute, 288 Minn. 258, 263, 179 N. W. (2d) 607, 611. The only testimony in the record bearing on the issue of Hulda's intent is contained in the quotations from the testimony of Irma, *supra.* This is ambiguous at best and is insufficient to rebut the presumption. Notwithstanding intimations to the contrary in Rutchick v. Salute, *supra,* the presumption is dispositive of the issue in the absence of countervailing evidence.

Accordingly, the proceeds of the Farmers & Mechanics Savings Bank account and of the Minneapolis Savings and Loan Association account are to be equally distributed to the daughters or their representatives. The proceeds of the First Bloomington Lake National Bank account are to be distributed to Irma Kalman as administratrix of the estate of Hulda Dahlroos.

We find no merit in plaintiff's contention that defendant is liable for double damages for the value of converted assets. Minn. St. 525.392.

Reversed.

KELLY, JUSTICE (dissenting).

The evidence discloses that Hulda Dahlroos, the owner of the funds that were deposited in the three accounts discussed in the foregoing opinion, had considerable knowledge concerning joint and several accounts in financial institutions. On August 22, 1951, she went to the Farmers & Mechanics Savings Bank of Minneapolis and to Minneapolis Federal Savings and Loan Association (now Midwest Federal Savings and Loan Association) with her daughters, Irma and Ruth, to change an account which had been in trust for Irma and one which had been a joint account with her then deceased husband. These two accounts were placed in the names of Hulda, Irma, and Ruth as joint tenants with right of survivorship, as more particularly set out in the majority opinion. The mother also opened a third account in the First Bloomington Lake National Bank in the same year as a joint and several account with the right of survivorship in her name and that of her daughter Irma. This last account was alleged to be a convenience account and was used by Irma to pay her mother's bills. In this account there were a number of withdrawals as well as a number of deposits. In the first two accounts there were no withdrawals prior to Hulda's death except on one occasion when a withdrawal was made by Irma from the Farmers & Mechanics account for Hulda's expenses. In the same year Hulda received legal counsel regarding her affairs and decided

against putting her house in joint tenancy with her two daughters.

This court has held that where a depositor intends to make a gift and makes a deposit payable to himself or the donee for the purpose of giving effect to that intention, it vests in the donee a present interest in the fund which will sustain the validity of the gift. In the same case we said that "[t]he statute providing that a deposit in the name of two or more may be paid to the survivor or to the personal representative of such survivor creates a presumption that the fund belongs to the survivor." Dyste v. Farmers & Mechanics Sav. Bank, 179 Minn. 430, 229 N. W. 865. In that case the donor had opened two accounts, one in his name or Esther C. Langmo and the other in his name or Olina Langmo. Both Olina and Esther Langmo testified that they understood that the donor had the right to make withdrawals but that whatever remained in the accounts at his death would belong to the respective survivors. The court stated inter alia (179 Minn. 435, 229 N. W. 867) :

"The particular form of the deposit is not important if it shows that the donee has the right to make withdrawals therefrom and therefore has a present interest therein. * * *

"The statute relating to such deposits, previously quoted, provides that where a deposit is made in the names of two or more, the deposit or any part of it may be paid to either of them or to the survivor or to the personal representative of such survivor. This statute protects the bank in making such payments. *It also recognizes that making a deposit in that manner gives to each of the persons named the right to make withdrawals therefrom and gives to the survivor the right to withdraw the residue.*

"From the fact that the statute authorizes the payment of the residue to the survivor or to the personal representative of such survivor, a presumption arises that such residue is the absolute property of the survivor, and *casts upon those who claim otherwise the burden of proving* that such was not the intention of the donor. But here, in addition to the presumption, it affirma-

tively appears that the donor intended that the deposits in question should become the absolute property of the donees." (Italics supplied.)

The Court of Appeals for the Eighth Circuit elaborated on his presumption of a gift, stating that the presumption arises only upon the death of the supposed donor.

"* * * The effect of the statute is to create a rebuttable presumption that the residue of the deposit is the absolute property of the surviving party, who takes as a donee. 229 N. W. 866. But this presumption in favor of a gift of an interest in the deposit arises only upon the death of the supposed donor. Conversely, where, as in the present case, the supposed donor exercised during her lifetime her right to withdraw the deposits, certainly no presumption in favor of the gift can arise." Cashman v. Mason, 166 F. (2d) 693, 697.

The facts in the instant case are very similar to those in Dyste. The form of deposits in all three instances gave the donee the right to make withdrawals therefrom. Irma testified that she understood that the money belonged to her mother and that her mother could make withdrawals therefrom. From the holding in Dyste, it is clear that upon the death of Hulda the balance remaining in two of the joint and several accounts became the property of the two surviving daughters and that they were given an interest in the accounts during Hulda's lifetime. In any event, under the presumption created by the statute, the daughters became the owners of the joint and several accounts upon Hulda's death and I am in accord with the majority opinion up to this point.

The holding in Dyste was reaffirmed in Hall v. Johnson, 179 Minn. 428, 229 N. W. 867, and in Zigan v. LeBlanc, 191 Minn. 538, 254 N. W. 810. In Park Enterprises v. Trach, 233 Minn. 467, 47 N. W. (2d) 194, however, under different facts this court departed from the "gift theory" rationale of prior Minnesota cases. In that case, a bank account described as joint and several

with rights of survivorship was opened by two depositors, each of whom had contributed individual funds to the account and from time to time had withdrawn funds from the account for family and individual purposes. This court found that it was impossible to determine the exact amount that each had contributed and held that such an account could be garnished for the individual debt of one of the depositors. The court, because of language used in the account agreement and the difficulty of determining ownership, adopted the so-called "contract theory," stating:

"This type of account is difficult, if not impossible, to classify under traditional categories of legal ownership. The account is distinguished from a joint tenancy because of the fact that it is joint and several, whereas in a joint tenancy there is joint ownership only. The survivorship feature of the account readily distinguishes it from a tenancy in common, and yet is not sufficient alone to make it a joint tenancy. 'Joint and several,' when used to designate a type of ownership, is somewhat of a legal anomaly notwithstanding the fact that the term appears in M. S. A. 48.30. By definition, several ownership is a denial of joint ownership. Since the type of owership which the bank and its depositors have created by their contract defies classification under traditional concepts of property ownership, we are forced to treat this case as presenting a contract question and must decide what the incidents of this type of ownership are primarily by reference to the terms of the contract creating it." 233 Minn. 469, 47 N. W. (2d) 195.

We also said:

"* * * A joint bank account of this kind is a creature of contract between parties avowedly indifferent to the exact percentage of ownership between themselves. The law should take them at their word and give effect to their contract without making detailed and belated evidentiary inquiries to establish factual ownership." 233 Minn. 472, 47 N. W. (2d) 197.

With respect to the effect of Minn. St. 48.30, this writer does not agree with the majority opinion's analysis that the statute "does not speak in terms of a single survivor." Rather, it speaks in terms of "single survivor" as well as "any survivor" or "any survivors." The critical words applicable to this case are "[w]hen any deposit shall be made * * * in the names of two or more persons upon joint and several account, the same * * * and the dividends or interest thereon, may be paid to either of these persons or to a survivor of them * * *." The word "them," as I would construe the statute, refers to "two or more persons" who are in the instant case Hulda, Ruth and Irma, and as it turned out in this case, the "survivor of them" happened to be Irma. At the moment of the mother's death, the title to the accounts rested in Ruth and Irma, and the accounts were still "joint and several with rights of survivorship" at this point of time. After the mother's death, either Ruth or Irma could have withdrawn all or any part of the funds under the language of our statute without any liability on the part of the financial institution. Had Ruth or someone on her behalf withdrawn half of the funds before her death, there would be no reason for the present controversy.

In the majority opinion, it was properly held that upon the mother's death there arose a rebuttable presumption that the residue in the accounts belonged to the two surviving daughters. However, I would add that the accounts retained the status of "joint and several accounts" and that upon the death of Ruth the rebuttable presumption under the statutes remained operative, the residue in the accounts becoming the property of the sole survivor, Irma.

The majority opinion pointed out that the statutory presumption arises on the death of the donor, a position in which I concur. However, I disagree with the conclusion that it is "in favor of each of the parties to whom the bank could make payment of the jointly held funds without legal liability to the other surviving co-owners," and that "at the instant of the donor-mother's death,

there arose a rebuttable presumption that the residue in the accounts was the absolute property of the surviving parties." As I view Minn. St. 48.30, the financial institutions here involved could have paid any part or all of the residue in these accounts before or after the mother's death to either Ruth or Irma without any legal liability. Inasmuch as the statute permits payment to a survivor of "them," why shouldn't the statutory presumption be that Irma, the survivor, is entitled to the entire residue in these accounts.

In the instant case, there was no evidence to rebut the presumption I would apply, just as the trial court did, that the residue in the three joint accounts was to go to the survivor. The evidence rather clearly supports this presumption. Perhaps the best evidence in support of the statutory presumption is the agreements signed by Hulda, Ruth, and Irma, set forth in footnote 1 of the majority opinion. The parties agreed that the account in the Farmers & Mechanics Savings Bank "is our joint and several account * * *, payable to any of us or to the survivor of us." As to the account in the Minneapolis Savings and Loan Association, they agreed each with the other and with the association that all funds invested were "for the purpose of creating ownership [in the account] as joint tenants with all the rights, including the right of survivorship."

The majority opinion sets forth the testimony to the effect that Hulda added the names of the two daughters to the two larger accounts in order that "the books would go * * * to her daughters or this surviving daughter." When Irma testified about these accounts, she stated:

"* * * [S]he had put up her accounts so if anything happened to her, that she knew where her money was at and that it would go to her daughters or to her survivor."

Continuing, she explained:

"* * * What I am saying is that at the time of her death, that it would go to her daughters or to her surviving daughter.

That is why she had those books drawn up like that. She did not want it to go into hands that—outside of the family."

This testimony would support the presumption and the written agreements with the financial institutions.

In fact, had the mother wanted to do so, she could have put half of all of her savings in a joint and several account in her name and Ruth's name, and the other half in a like account in her name and Irma's name. She was certainly aware of this possibility, as she did this with the so-called convenience account.

It appears from the memorandum of the lower court that the decision was based on both the "gift theory" and the "contract theory." Referring to Minn. St. 48.30, the court quoted from a "gift theory" case, Cashman v. Mason (8 Cir.) 166 F. (2d) 693, 697, in which it was said:

"* * * The effect of the statute is to create a rebuttable presumption that the residue of the deposit is the absolute property of the surviving party, who takes as a donee. * * * But this presumption in favor of a gift of an interest in the deposit arises only upon the death of the supposed donor."

The trial court also cited and quoted from Park Enterprises v. Trach, *supra*, a "contract theory" case. The court's decision in this case could (and should) be sustained on either theory. If the contract theory is discarded, the account agreement executed by Hulda, Ruth, and Irma should in any event be the best evidence of Hulda's intention supportive of the statutory presumption.

The account at the First Bloomington Lake National Bank is quite properly designated as a convenience account. The testimony discloses that Irma apparently handled much of her mother's financial affairs. Hulda's experience and knowledge of joint accounts and also the fact that in the same year she had opened two accounts in the names of both daughters as well as in her own name, show that she intended to favor Irma with whatever balance remained in this account.

There is nothing inconsistent in applying the statutory pre-

sumption to this convenience account; the agreement with the bank and all other evidence indicates that the donor intended to have the balance go to Irma. She could have added Ruth's name to this account or kept this account in her sole name and merely authorized Irma to withdraw funds from the account. Instead, she chose to put the account in her name and Irma's.

Few cases are to be found involving joint and several accounts with rights of survivorship where there are two donees and one dies shortly after the donor, as in the instant case. In Lett v. Twentieth Street Bank, 138 W. Va. 759, 77 S. E. (2d) 813, one Boyd Wilson named Prudence Lett, his sister, as a depositor so that the passbook read "Boyd or Delania Wilson or Prudence Lett." He secured a signature card from the bank and caused his sister to write her name thereon. The opinion does not indicate, but it seems probable, that all the money deposited belonged to Boyd Wilson and that neither his wife nor his sister originally owned any part thereof. The opinion also fails to show expressly that there was an intention on the part of the donor to create a right of survivorship for the benefit of his sister although her daughter testified that he intended that his sister was to receive the money so deposited. Wilson died intestate, and his wife, Delania, died intestate approximately one month thereafter. Prudence Lett thus became the sole survivor of the three persons named in the savings account. The applicable statute in the Lett case provided in part:

"When a deposit is made by any person in the name of such depositor and another person and in form to be paid to either, or the survivor of them, such deposit, and any additions thereto made, by either of such persons, upon the making thereof, shall become the property of such persons as joint tenants; and the same, together with all interest thereon, shall be held for the exclusive use of the persons so named, and may be paid to either during the lifetime of both, or to the survivor after the death of one of them; and such payment and the receipt or the acquittance of the one to whom such payment is made shall be a valid

and sufficient release and discharge for all payments made on account of such deposit, prior to the receipt by the banking institution of notice in writing, signed by any one of such joint tenants, not to pay such deposit in accordance with the terms thereof." Acts of W. Va. 1929, c. 23, § 24, W. Va. Code 1961, § 3205 (31-8-23).

The court in Lett held that the applicable statute required no construction, that it created a joint tenancy in the deposits made by Boyd Wilson, and that his surviving sister was entitled to the entire deposit and interest.

Another case factually similar to the one before us is Matter of Estate of Rushak, 28 App. Div. (2d) 807, 281 N. Y. S. (2d) 940. There, one Paraska Rushak converted a bank account she owned to a joint account, the signature card bearing her signature and that of her two sons, John and Stephen. The card stated that the account was jointly owned by the signatories, the survivor being entitled to the balance. The book was kept by Mrs. Rushak, the sole depositor, until her death, five days after which her son Stephen died, leaving John as the surviving joint tenant. The court in that case stated:

"* * * The fact that there were three, rather than the usual two, joint tenants does not change this result (General Construction Law, § 35); nor is it affected by the death of one joint tenant. If, during the lifetime of the two surviving tenants, neither disposes of his joint interest, upon the death of the second joint owner the last survivor becomes the sole owner. (Matter of Conklin, 259 App. Div. 432.) It is not important what the intention of either Stephen or John might have been after the death of Paraska as regards the ultimate disposition of the bank account, for they were not then creating a joint tenancy—or any interest—as between themselves. The joint tenancy with the right of survivorship had already been created in 1959 and that tenancy continued up to the death of Stephen, in the absence of any act by either of the brothers to terminate it. The joint ownership of personal property was analogous to a joint estate in

lands (Matter of McKelway, 221 N. Y. 15, 18) and until terminated by act of the parties continued subject to the right of sole ownership in the survivor." 28 App. Div. (2d) 807, 281 N. Y. S. (2d) 941.

The New York statute construed in the Rushak case provides as follows:

"When a deposit of cash, securities, or other property has been made or shall hereafter be made in or with any banking organization * * * in the name of such depositor or shareholder and another person and in form to be paid or delivered to either, or the survivor of them, such deposit or shares and any additions thereto made, by either of such persons, after the making thereof, shall become the property of such persons as joint tenants and the same, together with all additions and accruals thereon, shall be held for the exclusive use of the persons so named, and may be paid or delivered to either during the lifetime of both or to the survivor after the death of one of them, and such payment or delivery and the receipt or acquittance of the one to whom such payment or delivery is made, shall be a valid and sufficient release and discharge to the banking organization * * *." Laws of N. Y. 1964, c. 157, § 9, 4 McKinney's Consol. Laws of N. Y. Ann., Banking Law, § 675.

The statutes considered in both Lett and Rushak contain language to the effect that upon the creation of a joint account with rights of survivorship the deposits "shall become the property of such persons as joint tenants." This might be a basis for distinguishing these cases from the one at bar. However, their reasoning seems appropriate to the instant case because of their facts and the language of the opinions.

The device of depositing funds in a joint and several account with rights of survivorship may be very useful in instances in which small estates are involved. It has been referred to as the "poor man's will." The uncertainties and the litigation which have evolved in a number of cases would indicate, however, that

if such an account is intended as a will, it should be described as a poor "poor man's will." In order to avoid uncertainties, our legislature might consider enacting legislation adopting the rule set forth in Jorgensen v. Dahlstrom, 53 Cal. App. (2d) 322, 332, 127 P. (2d) 551, 556, where the court interpreted a statute similar to Minn. St. 48.30, stating:

"In the absence of fraud, unsound mind or undue influence, the deposit or transfer of a fund in a bank as a joint tenancy account, payable to either or the survivor of the parties to the agreement, vests the title thereto immediately in each of them and after the death of one of such depositors the fund becomes the absolute property of the survivor."

Such legislation would reach an intended result where joint and several accounts are used by knowledgeable people. Attorneys, in advising as to the benefits of using or not using such accounts, could with reasonable certainty point out all the legal consequences. I have no doubt that the ordinary lay person in opening accounts is advised by the financial institution that the money will be paid out in accordance with our statutes. Because of our rulings that a mere presumption is created, many cases will have to be decided when evidence may not be available because witnesses may have died, may fail to remember the particular incident, or because of the application of the Dead Man's Statute. Under the majority ruling, where three or more persons are involved, there will not even be a rebuttable presumption that the last survivor is entitled to the residue.

Under the theories advanced in Lett and Rushak, and under the language of the Minnesota cases, it would appear that upon the death of Ruth the statutory presumption arose. (The same result should obtain whether her death occurred a few hours before or a few hours after Hulda's demise.) There being no evidence to overcome this presumption and in the light of the evidence sustaining such a presumption, I would hold that the lower court should be affirmed.

OTIS, JUSTICE (dissenting).

I concur in the dissenting opinion of Mr. Justice Kelly.

PETERSON, JUSTICE (dissenting in part, concurring in part).

I concur in the statement of law expressed in the dissenting opinion of Mr. Justice Kelly and, for the reasons stated by him, would affirm the trial court with respect to the contested accounts in the Farmers & Mechanics Savings Bank of Minneapolis and the Minneapolis Federal Savings and Loan Association. I concur with the majority in reversing as to the small account in the First Bloomington Lake National Bank, for in my view the statutory presumption was clearly rebutted by the evidence that it was established and used as a joint account solely for convenience.