HAROLD L. RUTCHICK, EXECUTOR OF ESTATE
OF JACOB SALUTE, v. NATHAN M. SALUTE.
NATHAN M. SALUTE v. HAROLD L. RUTCHICK,
EXECUTOR OF ESTATE OF JACOB SALUTE.

179 N. W. (2d) 607.

August 28, 1970—Nos. 42050, 42051.

*Eugene W. Hoppe,* for appellant.
*Sydney Berde,* for respondent.

Heard before Knutson, C. J., and William P. Murphy, Otis, Rogosheske, and James F. Murphy, JJ.

WILLIAM P. MURPHY, JUSTICE.

These are appeals from judgments of the district court, one entered in an action by respondent, Harold L. Rutchick, to recover possession of a savings certificate from appellant, Nathan M. Salute, and the other entered in a declaratory judgment action brought by appellant to determine ownership of a savings certificate issued to replace the one which was the subject of the action brought by respondent. (The replacement certificate being identical with the original except for date of issuance and due date, the actions will be treated as dealing with the same certificate.)

Appellant contends that he acquired an interest as a joint owner by virtue of a valid inter vivos gift and therefore is entitled to the proceeds of the certificate, which was purchased by his deceased uncle, Jacob Salute. The trial court agreed with respondent, also a nephew of decedent and executor of his estate, that the savings certificate is an asset of the estate to be distributed according to the terms of decedent's will.

From the record it appears that the deceased uncle, when he was about 72 years of age, purchased a savings certificate in the amount of $25,000 from the Midway National Bank of St. Paul.

The certificate, dated September 4, 1964, was made payable to Jake Salute or Nathan Salute as owners and provided:

"If several owners are named herein, any one of them, or the survivor of them, is referred to by the use of the term 'owner' and may be treated by Bank as though he or she were the sole owner of this certificate for all purposes, including payment of interest or principal, presentment, transfer and giving or receiving of notice."

Although issued in their joint names, the entire sum of $25,000 used for the purchase of the certificate was provided by Jacob, and no part was contributed by Nathan. The certificate thereafter was retained by Jacob in his safety deposit box at the Midway National Bank, access to which was under Jacob's control. On September 5, 1964, Jacob gave Nathan a signature card relating to the $25,000 certificate, which Jacob had signed. Nathan then signed the card and retained it in his possession. On September 7, 1964, Jacob sustained a paralytic stroke which soon rendered him totally incompetent to manage his affairs. On September 21, 1964, his accountant was appointed and qualified as a special guardian pursuant to the provisions of Minn. St. 525.591. On December 10, 1966, Jacob died, leaving an estate of approximately $130,000, consisting of stocks, bonds, and the savings certificate herein described.

It is unnecessary to relate details of maneuvers preliminary to these actions by which the contesting heirs sought to either protect their rights or gain an advantage with reference to the ownership of the proceeds of the certificate. It is sufficient to say that by his will Jacob bequeathed his estate in equal shares to his nephews, Nathan and Harold, and to his niece, Ann Ferster, Harold's sister. It appears that upon the death of Harold's mother, who was the decedent's sister, Harold and Ann lived with the decedent and their grandmother for some years. While, as the trial court found, the relationship between the other nephew, Nathan, and decedent "[a]pparently * * * was a

warm and cordial one," the relationship between the Rutchick children and the uncle was at least as close during their childhood and youth and remained warm and cordial during the ensuing years.

Contrary to the contentions of Nathan that he was entitled to the proceeds of the certificate as the surviving owner, the trial court determined that the certificate was an asset of the estate to be shared by the beneficiaries under the will. The court found that the decedent—

"* * * did not make legal delivery of [the certificate] to Nathan, but retained sole possession and control in himself as to said certificate. Nathan understood that he had no right or title in the said certificate during Jacob's lifetime and further that monies represented by said certificate were at all times available to Jacob during his lifetime."

And, further, that "Jacob did not make a gift of the said certificate during his lifetime to Nathan." The court concluded: "The Estate of Jacob Salute * * * is owner of all right, title and interest in Savings Certificate No. 5359 in the amount of $25,000.00 issued by Midway National Bank, St. Paul, on March 4, 1966," and that the "executor of said estate * * * is entitled to the possession thereof."

The dispute grows out of a common, informal arrangement by which a person deposits money in an institution and provides that others may have a joint interest in it. While this practice is accepted as one of general usage, it frequently gives rise to a dispute as to the nature of the interest created by it. Although the majority of the decisions in this state have dealt with ordinary savings accounts as opposed to savings certificates, the particular form of deposit is of no significance. The nature of the legal ownership created by the arrangement does not fall within any traditional category. A characterization of the nature of the property interest created has meaning only in context of the particular circumstances out of which it grew. The interest may be

created by contract or by the unilateral or uncommunicated act of the depositor and may serve necessities of convenience or long-range plans of the donor. Because the joint bank account serves divergent functions and is adaptable to varying uses, it often creates legal and equitable dilemmas which have prompted legal scholars to discuss the subject on a number of occasions. Note, 53 Col. L. Rev. 103; Kepner, *The Joint and Survivorship Bank Account—A Concept Without a Name*, 41 Calif. L. Rev. 596; Kepner, *Five More Years of the Joint Bank Account Muddle*, 26 U. of Chi. L. Rev. 376. The arrangement has been employed to effect an inter vivos gift to the person named as joint owner, to create a trust, to allow an agent to transact his principal's business, to facilitate the handling of family finances, and to make a testamentary disposition. Note, 53 Col. L. Rev. 103; 10 Am. Jur. (2d) Banks, §§ 378, 390. This court has considered such deposits in the nature of gifts and governed by the rules applicable to gifts. Courts adopting the gift theory generally attempt to resolve the issue as to the nature of the interest by searching the record for evidence of donative intent. Dyste v. Farmers & Mechanics Sav. Bank, 179 Minn. 430, 229 N. W. 865.

The characterization of joint accounts as inter vivos gifts poses certain problems since traditionally certain prerequisites must exist to validate the gift. The general essentials of a gift, as stated in Brennan v. Carroll, 260 Minn. 521, 528, 111 N. W. (2d) 229, 234, are—

"* * * (1) delivery, (2) intention to make a gift on the part of the donor, and (3) absolute disposition by him of the thing which he intends to give to another."

While it is true that a series of early Minnesota decisions invalidated purported gifts of interests in joint deposits because of failure of the depositor to complete manual delivery of the certificate or the money it represented and failure to relinquish absolute control (Winslow v. McHenry, 93 Minn. 507, 101 N. W. 799, and Roeser v. Ryckman, 121 Minn. 56, 140 N. W. 126), later

decisions of this court have held that such delivery is not an absolute requisite and that failure to effect delivery will not necessarily defeat validity of a survivorship account. Dyste v. Farmers & Mechanics Sav. Bank, *supra;* McLeod v. Hennepin County Sav. Bank, 145 Minn. 299, 176 N. W. 987; Zigan v. LeBlanc, 191 Minn. 538, 254 N. W. 810. Nevertheless, delivery or retention by the donor may be considered as bearing upon the issue of intent.

In support of his claim that the transaction constitutes a gift, appellant relies on the provisions of Minn. St. 48.30 which deal with this type of deposit. That statute provides in part:

"* * * When any deposit shall be made by any person in trust for another, and no other written notice of the existence and terms of any legal and valid trust shall have been given to the bank, in case of the death of the trustee, the same, or any part thereof, and the dividends or interest thereon, may be paid to the person for whom the deposit was made."

This statutory provision was adopted to protect banks in case of payment to a beneficiary before receiving notice of the claim of the representative of the estate. In re Estate of Jeruzal, 269 Minn. 183, 130 N. W. (2d) 473. In Dyste v. Farmers & Mechanics Sav. Bank, *supra,* it was pointed out that the statute creates a presumption that upon the death of the donor the proceeds of the deposit become the property of the survivor. Accordingly, appellant contends that he is entitled to the proceeds of the certificate. He relies upon the stark and unilluminated evidence of the fact of the deposit and the existence of the signature card supported by the presumption of ownership derived from § 48.30.

It should be kept in mind, however, that this presumption of ownership is a rebuttable presumption, which is nothing more than a rule of evidence. It disappears the moment evidence is presented negating the gift. In Brennan v. Carroll, *supra,* it was held that the claimant's case could not rest entirely upon the presumption where the essentials of the gift of the savings account had not been established. An examination of the various authori-

ties of this court (Dyste v. Farmers & Mechanics Sav. Bank, *supra;* Zigan v. LeBlanc, *supra;* Brennan v. Carroll, *supra)* indicates that an alleged donee in an action to determine ownership of a joint savings certificate or account possessed by the decedent donor must establish by competent evidence that the donor intended to create a present interest in the donee. In the face of countervailing evidence, the presumption is not dispositive of the issue. In those cases where the donee has prevailed, there was additional fact evidence of words and conduct of the donor which evidenced the gift. Dyste v. Farmers & Mechanics Sav. Bank, *supra;* Zigan v. LeBlanc, *supra.*

Here the record is barren of fact evidence by word or conduct which would indicate the donor intended to establish a gift to appellant. It seems to us that the trial court could well find from the entire configuration of surrounding facts that the donor decedent established the account for his own convenience. In his review of the evidence, as contained in a helpful memorandum, the trial court observed:

"Jacob had maintained a safe deposit box at the Midway National Bank since January, 1941. It is undisputed that from that date until September 4, 1964, inclusive, only he ever entered that box. Immediately after he purchased Certificate No. 2701 he placed it in that box, where it remained until later inventoried during his guardianship. Signing the signature card was the only act performed by him prior to his incompetency bearing on his intention. There were no conversations had by him with any other persons as to his intent to make a gift to Nathan at that time. In *Zigan, McLeod* and *Dyste* conversations with third parties were deemed adequate to support an intent by the donor to make a gift, and in *McLeod* and *Dyste* the intended donee had the right to make withdrawals from the joint account. Thus, on their facts, these cases, all of which upheld a finding of a gift, must be distinguished."

The trial court further alluded to evidence in the record which

indicated that on a prior occasion the decedent had, in the interest of his own convenience, created a joint account at another financial institution in which his nephew, Harold L. Rutchick, was named as joint owner. The trial court concluded:

"Even adopting the argument asserted by Nathan that the presumption accorded by M.S. 48.30 should be applied in his favor in these proceedings, the Court is obliged to conclude that that presumption has ceased and disappeared with the receipt in evidence of substantial proof to the contrary, and that the quantum of proof falls substantially short of the 'clear and convincing' requirements.

\* \* \* \* \*

"Putting aside all of the actions disclosed by the evidence taken by the various parties herein subsequent to Jacob's incompetency, and assuming that Certificate No. 2701 presently remained in its original form in the safe deposit box at the Midway National Bank, the result which the Court must reach is the conclusion that no legally effective disposition of the funds represented by the certificate was made by Jacob Salute in favor of Nathan Salute."

The record establishes that Jacob's will bequeathed his estate in equal shares to his two nephews and niece. They were the natural objects of his bounty, and there is nothing in the evidence which would indicate that he preferred one over the other or that one had a greater claim to his generosity than the other. In the final analysis, the question presented is one of fact, and we conclude that the record supports the finding of the trial court.

Affirmed.

MR. JUSTICE KELLY, not having been a member of this court at the time of the argument and submission, took no part in the consideration or decision of this case.