## In re CONSERVATORSHIP OF Ollie GOBERNATZ, Conservatee.

### No. CX–99–1217.

Court of Appeals of Minnesota.

Dec. 21, 1999.

Review Denied Feb. 15, 2000.

John E. Valen, Walker, for appellant Dardanella Luke.

John A. Masog, Park Rapids, for respondents Gary and Joan Pfeiffer.

Considered and decided by RANDALL, Presiding Judge, KLAPHAKE, Judge, and HOLTAN, * Judge.

## OPINION

RANDALL, Judge.

The district court found Dardanella Luke in civil contempt for refusing to return the proceeds of a certificate of depos-

* Retired judge of the district court, serving by appointment pursuant to Minn. Const. art. VI, § 10.

it. Luke appeals and argues the district court did not have jurisdiction over these proceeds relating to the certificate of deposit. We affirm.

## FACTS

Appellant Dardanella Luke assisted decedent Ollie Gobernatz as a friend and caregiver for approximately 12 years. Gobernatz became ill in the summer of 1997. In July 1997, Gary G. Pfeiffer and Joan M. Pfeiffer were appointed special conservators of the person and estate of Gobernatz. They were given all powers necessary under Minn.Stat. § 525.56, subds. 3, 4 (1996), to provide for Gobernatz's medical needs and to take care of her property. The Pfeiffers are not the beneficiaries of Gobernatz's estate.

Among Gobernatz's assets was a certificate of deposit issued by Northwoods Bank in Park Rapids, Minnesota in the amount of $1,236.16. The certificate was issued on September 7, 1990 in the names of Gobernatz and Luke as joint tenants. Gobernatz supplied all funds in the account. Soon after they became conservators, the Pfeiffers furnished the Northwoods Bank with written evidence of their appointment, and the bank amended its records to show the certificate of deposit as "Ollie Gobernatz in care of Gary and Joan Pfeiffer."

Gobernatz died on September 2, 1997. Beginning in late September, the Pfeiffers attempted to compel Luke to turn over the certificate of deposit to Gobernatz's estate, but Luke refused. In October 1997, Luke presented the certificate of deposit to the Northwoods Bank and cashed it for $1,749.

An evidentiary hearing was held on May 1, 1998 concerning a dispute over Gobernatz's personal possessions. In July 1998, the district court concluded that the Pfeiffers' written notice to Northwoods Bank was sufficient to change the form of the account from a joint tenancy to sole ownership by Gobernatz. As a result, Gobernatz was the sole owner of the certificate at the time of her death. The district court directed Luke to return the proceeds from the certificate. Although Luke told the district court on December 7, 1998, that she would pay the proceeds to the estate, she never did so. In June 1999, the district court found Luke in civil contempt and ordered that if she did not pay the proceeds by July 13, 1999, the sheriff would be directed to arrest her. Luke continues to refuse to pay the proceeds.

## ISSUES

1. Is the order for civil contempt final and appealable?

2. Did the district court lack subject matter jurisdiction to determine whether the proceeds of the certificate of deposit must be returned to Gobernatz's estate?

## ANALYSIS

### I. Civil Contempt

Respondents argue that the order finding Luke in civil contempt is not final or appealable. Generally, contempt orders adjudged during probate proceedings are appealable. Minn.Stat. § 525.71(10) (1998). An order is not appealable when "[i]t is a preliminary and conditional one, directing the punishment of the party defendant in case he refuses to comply with its requirements." *Semrow v. Semrow*, 26 Minn. 9, 10, 46 N.W. 446, 446 (1879). But a conditional order is distinguishable from an order finding a party guilty of civil contempt. *Laff v. Laff*, 161 Minn. 122, 123, 200 N.W. 936, 936–37 (1924). If an order directly commits the party, it is final and not conditional. *Id.* at 123, 200 N.W. at 937.

The order for civil contempt found Luke guilty of contempt and directed issuance of an arrest warrant. It was stayed until July 13, 1999 to allow Luke one last chance to return the proceeds, which she failed to do. We conclude the civil contempt order was final and, therefore, appealable.

## II. Subject Matter Jurisdiction

■ Luke argues the district court did not have subject matter jurisdiction over the proceeds of the certificate of deposit because the account was created as a joint tenancy and she owned the certificate of deposit by right of survivorship when Gobernatz died. But the underlying question is whether the Pfeiffers, as special conservators, had the power to change the form of the joint account during Gobernatz's lifetime. The facts of this case are not in dispute, thus we need not give deference to the district court because this is a purely legal issue. *See Frost–Benco Elec. Ass'n v. Minnesota Pub. Utils. Comm'n*, 358 N.W.2d 639, 642 (Minn.1984) (holding appellate court need not give deference to district court's decision on legal issue).

In 1973, the legislature enacted the Minnesota Multiparty Accounts Act to clarify the rights of owners of multi-party bank accounts. *See* Minn.Stat. §§ 524.6–201–214 (1998) (Minnesota Multiparty Accounts Act); *see* Note, *The "Poor Man's Will" Gains Respectability: Using the Minnesota Multi–Party Accounts Act*, 1 Wm. Mitchell L.Rev. 48, 49 (1974) (noting legislation changed some court-made rules and filled in gaps in prior law). The act rejects traditional joint tenancy theories at common law and adopts a contract theory between the bank and the depositor, within the limitations imposed by the act. Note, 1 Wm. Mitchell L.Rev. at 57–58.[1]

■ Generally, sums remaining on deposit at the death of a party to a joint account belong to the surviving party. Minn.Stat. § 524.6–204(a). The right of survivorship exists *if* the account is in the form of a joint account at the time of death of a party. Minn.Stat. § 524.6–205. A joint account may be altered "by written order given by a party to the financial institution to change the form of the account." *Id.* The request must be signed by a party and received by the bank during a party's lifetime. *Id.* A party is defined under the act as

> a person who, by the terms of the account, has a present right, subject to request, to payment from a multiple-party account. * * * Unless the context otherwise requires, it includes a guardian, conservator, personal representative, or assignee, including an attaching creditor, of a party.

Minn.Stat. § 524.6–201, subd. 7.

■ As special conservators who were granted all necessary powers to take care of Gobernatz's property under Minn.Stat. § 525.56, subd. 3 (1998), the Pfeiffers were a "party" under the act. The Pfeiffers changed the form of the joint account by written notice to the bank during Gobernatz's lifetime.[2] We hold that at the time of Gobernatz's death, Luke was no longer a joint holder of the certificate of deposit and had no power to cash the certificate. As a result, the district court had subject matter jurisdiction over the proceeds of the certificate of deposit because the money was part of the probate estate. The district court had the power to order Luke to return the proceeds and to hold her in civil contempt for failing do so.

## DECISION

The order holding Luke in civil contempt is final and appealable. The special conservators of Gobernatz's estate had the power to change the form of the account

---

1. Caselaw before 1973 that based conclusions regarding joint accounts on the theory of joint tenancy with the right of survivorship is no longer persuasive. *See, e.g., Hagen v. Rekow*, 253 Minn. 341, 346, 91 N.W.2d 768, 771 (1958) (holding guardian cannot eliminate name of joint tenant on certificate of deposit without court approval).

2. Luke does not allege the Pfeiffers acted in bad faith. Likewise, it appears that Luke has an honest believe that the money is hers.

from joint to sole ownership during Gobernatz's lifetime. As a result, Luke has no claim to the proceeds by right of survivorship, and the district court did not err by holding Luke in contempt.

**Affirmed.**