**In re the ESTATE OF Patrick W. BUTLER, Deceased.**

No. A09–1208.

Court of Appeals of Minnesota.

May 25, 2010.

William A. Erhart, Erhart & Associates, L.L.C., Anoka, MN; and Ronald R. Bradley, Minneapolis, MN, for appellant Maureen Kissack.

Kyle T. Wermerskirchen, Steven H. Snyder & Associates, Maple Grove, MN, for respondents Sheila M. Montognese, Bridget Beaudry, Lori France, Sandra Taverna, John Sandahl and Steven Sandahl.

Stephen M. Baker, Walker, MN, for respondent Estate of Patrick W. Butler.

Considered and decided by SCHELLHAS, Presiding Judge; HALBROOKS, Judge; and JOHNSON, Judge.

## OPINION

HALBROOKS, Judge.

Appellant challenges the treatment of five certificates of deposit as estate assets

following a jury's determination that her father did not intend proceeds from the accounts to belong solely to her. Because we conclude that the evidence was sufficient to support the jury's verdict and because the district court did not err in admitting evidence or instructing the jury, we affirm.

## FACTS

Appellant Maureen Kissack is the daughter of decedent Patrick Butler and is named as the personal representative in his will. Respondents are Butler's children and the children of his second wife, Viola Sandahl, who predeceased him. Butler and Sandahl executed reciprocal wills in 1996. Each spouse designated the other as the sole beneficiary and provided for distribution of the estate in equal shares to the couple's combined eight children if the other spouse predeceased him or her. Article IV of Butler's will provided:

I hereby give, devise and bequeath my property, real, personal and mixed, including but not limited to my interest in real property, IRA's, insurance policies and checking accounts, wherever so located, to Viola M. Sandahl if she survives me by thirty days.

If Viola M. Sandahl does not survive me … I then leave my entire estate in equal shares to the following named persons who are alive at the time of my death: Bridget A. Beaudry, Sheila M. Cooper, Lori M. France, Maureen J. Kissack, Sharon F. Sax, Jack K. Sandahl, Steven K. Sandahl, and Sandra E. Taverna.

Both Viola Sandahl and one of her daughters, Sharon F. Sax, predeceased Butler, who died on February 1, 2008.

Following Butler's death, Kissack filed a petition to probate his will and for her appointment as personal representative. The district court granted the petition. In the process of settling Butler's affairs, Kis-

sack discovered the existence of five certificates of deposit (CDs) for amounts totaling approximately $100,000. Each of the CDs listed Butler and Kissack as joint accountholders, and each was designated as a "Joint Account—With Survivorship." One of the CDs was subject to a lien securing a loan on Butler's manufactured home.

Kissack, who had no knowledge of the CDs prior to Butler's death, consulted with counsel for the estate and a personal attorney, both of whom advised her that the money in the accounts belonged to her and was not subject to probate. Kissack cashed in CDs worth approximately $50,000, which she used to pay down her mortgage. Kissack could not cash out the CD subject to the manufactured-home lien; that CD remains in the possession of the bank.

Based in part on Kissack's failure to include the CDs as estate assets, respondent Sheila M. Montognese, another of Butler's daughters, petitioned the court to remove Kissack as personal representative. Montognese asserted that Kissack had "failed to account for substantial Estate assets and … prematurely distributed Estate assets." The district court held an evidentiary hearing on the petition to remove Kissack as personal representative. Following the hearing, the district court issued an order denying the petition to remove Kissack as personal representative but requiring her to post a $300,000 bond. In the same order, the district court concluded that the CDs were estate assets and directed that their proceeds be deposited into the estate account.

Kissack moved the district court for amended findings or a new trial on the status of the CDs, arguing that she did not have proper notice that the issue would be resolved by the district court in connection with the petition for her removal as per-

sonal representative. Kissack also asserted that she was entitled to a jury trial on the status of the CDs. Over respondents' objection, the district court granted Kissack a new trial, stating that it "should not have made a ruling on the ownership of the joint accounts because that issue was not properly before the Court at the time of the hearing." The district court subsequently empanelled a jury to determine whether Butler intended exclusive ownership of the CDs to pass to Kissack upon his death.

At trial, the jury heard testimony from Kissack and four of the six respondents. Neither Kissack nor any of the testifying respondents was aware of the CDs before Butler's death. And none of respondents knew any reason why Butler would leave the CDs to Kissack, rather than in equal shares to Kissack and each of the respondents in accordance with the terms of his will.

The testifying respondents asserted that Butler had a good relationship with each of his children and stepchildren. But Kissack and Montognese testified regarding a falling out between Butler and his third daughter, respondent Bridget Beaudry. And Montognese testified regarding a detrimental change in her own relationship with her father about six months before his death. Respondents acknowledged that Butler had dated other women during the 11 years after Viola Sandahl died, but insisted that Viola was the love of his life and that he would not have departed from the estate plan that they had created together. Respondents also conceded that Butler had purchased a number of life-insurance policies naming only his natural children as beneficiaries.

Respondents asserted that the circumstances surrounding the purchase of the CDs supported a finding that Butler intended them to pass through his estate. Montognese and respondents Jack Sandahl and Steven Sandahl testified that the CDs were funded with insurance and property-sale proceeds after a fire destroyed a lake home that Viola Sandahl had purchased before marrying Butler. Respondents argued that the use of a CD—rather than another asset—to secure the manufactured-home loan reflected Butler's intent that CDs be considered assets of his estate. But a bank employee testified that he advised Butler that using the CD as security offered the lowest cost and simplest financing option.

Following the testimony and arguments, the district court instructed the jury. The district court declined to give an instruction requested by Kissack on the difference between probate and non-probate assets, reasoning that "[t]he question is really whether there was a different intent other than joint ownership. I think it's simpler that way, so I'm going to just give that instruction." The jury was given a special-verdict form, asking whether "there was clear and convincing evidence that the decedent had an intent other than what the CD's stated on their face— that Maureen Kissack became the owner of the funds upon Patrick Butler's death?" The jury answered "yes."

Kissack moved for judgment as a matter of law or a new trial, arguing that (1) the evidence was insufficient to support the jury's finding; (2) the district court abused its discretion by admitting irrelevant evidence, including Butler's and Viola Sandahl's wills and testimony regarding Butler's relationships with the parties, the source of funds used to purchase the CD accounts, and the use of one CD to secure the manufactured-home loan; and (3) the district court erred by refusing to instruct the jury on probate versus non-probate assets. The district court denied the motions, and Kissack appeals.

## ISSUES

I. Did the district court err by denying Kissack's motion for judgment as a matter of law or a new trial on the ground that the evidence was insufficient to support the verdict?

II. Did the district court err by denying Kissack's motion for a new trial on other grounds?

## ANALYSIS

■ On appeal from a posttrial motion for judgment as a matter of law (JMOL), "this court determines whether there is any competent evidence reasonably tending to sustain the verdict." *Bolander v. Bolander*, 703 N.W.2d 529, 545 (Minn.App.2005) (citing *Blue Water Corp. v. O'Toole*, 336 N.W.2d 279, 281 (Minn. 1983)), *review dismissed* (Minn. Nov. 15, 2005); *see also* Minn. R. Civ. P. 50.02. "The jury's verdict stands unless it is manifestly and palpably contrary to the evidence, considered in the light most favorable to the plaintiff." *Id.* (citing *Stuempges v. Parke, Davis & Co.*, 297 N.W.2d 252, 256 (Minn.1980)). "Verdicts are upset only in extreme circumstances." *Id.* (citing *Ralph Hegman Co. v. Transamerica Ins. Co.*, 293 Minn. 323, 327, 198 N.W.2d 555, 558 (1972)).

■ This court reviews the district court's denial of a motion for a new trial for abuse of discretion. *Lake Superior Ctr. Auth. v. Hammel, Green & Abrahamson, Inc.*, 715 N.W.2d 458, 476–77 (Minn. App.2006), *review denied* (Minn. Aug. 23, 2006). We " 'will not set aside a jury verdict on an appeal from a district court's denial of a motion for a new trial unless it is manifestly and palpably contrary to the evidence viewed as a whole and in the light most favorable to the verdict.' " *Id.* at 477 (quoting *Navarre v. S. Washington County Schs.*, 652 N.W.2d 9, 21 (Minn.2002)). The mere possibility that impaneling another jury and conducting a new trial would bring about an opposite result is not grounds for a new trial. *Heggestad v. Dubke*, 304 Minn. 129, 132, 229 N.W.2d 34, 36 (1975).

## I.

■ The rights of survivorship of a joint accountholder upon the death of another joint accountholder are governed by Minn. Stat. § 524.6–204 (2008). Paragraph (a) of the section provides:

Sums remaining on deposit at the death of a party to a joint account belong to the surviving party or parties as against the estate of the decedent *unless there is clear and convincing evidence of a different intention,* or there is a different disposition made by a valid will ... specifically referring to such account.

Minn.Stat. § 524.6–204(a) (emphasis added). Before the district court, and in her primary brief on appeal, Kissack asserted that respondents did not submit evidence sufficient to make the showing required by paragraph (a).

But in her reply brief on appeal—and again at oral argument—appellant argued for the first time that the account in this case is governed not by paragraph (a), but instead by paragraph (d), which provides:

A right of survivorship arising from the express terms of the account, or under this section, or under a P.O.D. payee designation, may be changed by specific reference by will, but the terms of such will shall not be binding upon any financial institution unless it has been given a notice in writing of a claim thereunder, in which event the deposit shall remain undisbursed until an order has been made by the probate court adjudicating the decedent's interest disposable by will.

Minn.Stat. § 524.6–204(d). Kissack not only failed to argue the applicability of paragraph (d) before the district court, but

indeed took the completely contrary position—that the status of the account raised an issue of fact under paragraph (a). Kissack, who explicitly sought and subsequently received a jury's determination under paragraph (a), now argues that the issue should have been determined under paragraph (d) by the district court as a matter of law.

■ Issues not raised before the district court are waived, and this court generally declines to address them. *See Thiele v. Stich*, 425 N.W.2d 580, 582 (Minn.1988) (stating that this court generally will not consider matters not argued to and considered by the district court). Nevertheless, we have considered and we reject Kissack's assertion that the entitlement to proceeds from a joint account with rights of survivorship is governed by paragraph (d). We note that the first part of paragraph (d) does no more than repeat a portion of what is provided for in paragraph (a)—that a joint accountholder may change, by the terms of a valid will, the survivorship status of a joint account. The operative portion of paragraph (d) protects financial institutions from liability for undisclosed changes to the status of a joint account. We do not read paragraph (d), as Kissack urges, to limit the operation of paragraph (a) when an account is designated as having survivorship rights. *See* Minn.Stat. § 645.16 (2008) (requiring statutes to be read to give effect to all of their provisions). Having rejected Kissack's untimely assertion that this dispute is governed by paragraph (d), we return our attention to Kissack's original challenge, under paragraph (a).

■ Under paragraph (a), respondents had the burden at trial to show, by clear and convincing evidence, that Butler did not intend the CD proceeds to belong to Kissack to the exclusion of her siblings and stepsiblings. "Clear and convincing proof requires more than a preponderance

of the evidence but less than proof beyond a reasonable doubt." *In re Estate of Lobe*, 348 N.W.2d 413, 414 (Minn.App.1984). This heightened standard of proof, however, does not alter the deference that we afford the jury's verdict. *See George v. Estate of Baker*, 724 N.W.2d 1, 6 (Minn. 2006) (explaining that the evidence must be "so overwhelming on one side that reasonable minds cannot differ as to the proper outcome") (quoting *Clifford v. Geritom Med. Inc.*, 681 N.W.2d 680, 687 (Minn. 2004)); *cf. Sorlie v. Thomas*, 235 Minn. 509, 511–12, 51 N.W.2d 592, 594 (1952) (noting that while a claim of undue influence must be proved by clear and convincing evidence, the heightened standard "does not change the rule by which the verdict is to be tested either by a court of review or by a trial court upon motion for judgment notwithstanding the verdict").

Although there was no direct evidence of Butler's intent with respect to the CDs in this case, ample circumstantial evidence supported the jury's verdict. *See Friend v. Gopher Co., Inc.*, 771 N.W.2d 33, 40 (Minn.App.2009) ("Minnesota law makes no distinction between circumstantial and direct evidence as to the degree of proof required." (quotation omitted)). The jury's verdict was consistent with evidence presented to it regarding the estate plan reflected in Butler's will, which treated all of the children and stepchildren equally. *See Rogers v. Moore*, 603 N.W.2d 650, 657–58 (Minn.1999) (reversing this court's determination that the evidence presented to the district court was "too vague and indefinite" to prove a fact by clear and convincing evidence, and emphasizing that a reviewing court should uphold a factual finding so long as there is reasonable evidence to support it).

The jury also heard testimony that: (1) Kissack was unaware of the CDs during Butler's lifetime; (2) Butler did not favor Kissack over respondents; (3) the CDs

were funded by proceeds from the sale of the premarital assets of Viola Sandahl; (4) Kissack referred to the accounts as "dad's accounts"; and (5) Butler used one of the CDs to secure his manufactured home, an estate asset. This evidence, considered as a whole, is sufficient to support the jury's verdict. *Cf. Rutchick v. Salute*, 288 Minn. 258, 265, 179 N.W.2d 607, 612 (1970) (holding similar evidence sufficient to support a finding that a savings certificate was intended to be distributed according to the terms of the decedent's will; emphasizing that "the question presented is one of fact" and concluding that "the record supports the finding of the [district] court").[1] Accordingly, we conclude that the district court did not abuse its discretion by denying Kissack's motion for JMOL or a new trial on this ground.

The dissent asserts that our decision introduces unnecessary uncertainty and limits a person's ability to control the disposition of property. We disagree. We note that the statutes provide several avenues by which an individual can direct the posthumous treatment of a joint account, including specific reference to that account in a will, Minn.Stat. § 524.6–204(a), or inclusion of a signed acknowledgment that "the balance in this account, upon the death of any party to this account, shall belong to the surviving party," Minn.Stat. § 524.6–213, subd. 1 (2008) (providing that inclusion of such a signed acknowledgment is conclusive proof of intent). In this case, there was no conclusive evidence of intent, and thus the case was appropriately decided under Minn.Stat. § 524.6–204(a). The district court gave Kissack exactly what she requested—a jury's determination of whether Butler intended that the CD proceeds pass solely to her, and we cannot conclude that the jury's finding is mani-festly and palpably contrary to the evidence.

**II.**

▆▆▆▆ In addition to her sufficiency-of-the-evidence argument, Kissack contends that a new trial is required because of the district court's errors in admitting evidence and instructing the jury. The district court exercises broad discretion in both of these areas, and we will reverse rulings only upon a showing that the district court abused that discretion. *Peterson v. BASF Corp.*, 711 N.W.2d 470, 482, 484 (Minn.2006).

Kissack asserts that neither Butler's will nor the quality of his relationships with her and respondents was relevant to his intent in establishing the CDs as joint accounts. We disagree. Relevant evidence is that which has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Minn. R. Evid. 401; *see also Jacobsen v. $55,900*, 728 N.W.2d 510, 526 (Minn.2007) (explaining that evidence is admissible even if it makes relevant fact only "slightly more probable" (quotation omitted)). The district court properly concluded that the challenged evidence was relevant to Butler's intent in establishing the joint accounts.

▆▆▆▆ Kissack asserts that the district court erred by failing to instruct the jury on the difference between probate and non-probate assets. Again, we disagree. The district court properly focused the jury's attention on the dispositive determination—Butler's intent with respect to the CDs. And the jury, after listening to the evidence, made its factual determination on that issue.

---

1. We are mindful that *Rutchick* involved the supreme court's interpretation of a predecessor statute in light of common-law principles of donative interest. We nevertheless find it persuasive authority, particularly in its deference to the fact-finder.

## DECISION

The evidence presented to the jury was sufficient to support its verdict that Butler did not intend the proceeds of the CDs to pass solely to Kissack, and the district court did not abuse its discretion in its evidentiary rulings or instructions to the jury.

**Affirmed.**

JOHNSON, Judge (dissenting).

I respectfully dissent from the opinion of the court. In my view, the evidence is insufficient to prove that Butler intended that the joint accounts should become the property of his estate upon his death.

On June 9, 2003, Butler obtained a series of five certificates of deposit from Woodland Bank. Each certificate was issued using a form that provides several "ACCOUNT OWNERSHIP" options. On each certificate, an "X" clearly marks a box next to the option described as "Joint Account—With Survivorship." On the second page of each certificate, the account ownership options are explained as follows:

**OWNERSHIP OF ACCOUNT AND BENEFICIARY DESIGNATION:** You intend these rules to apply to this account depending on the form of ownership and beneficiary designation, if any, specified on page 1. We make no representations as to the appropriateness or effect of the ownership and beneficiary designations, except as they determine to whom we pay the account funds.

**Individual Account**—Such an account is owned by one person.

**Joint Account With Survivorship (And Not As Tenants In Common)**—

Such an account is owned by two or more persons. *Each of you intend that upon your death the balance in the account (subject to any previous pledge to which we have consented) will belong to the survivor(s). If two or more of you survive, you will own the balance in the account ownership as joint tenants with survivorship and not as tenants in common.*

**Joint Account—No Survivorship (As Tenants In Common)**—Such an account is owned by two or more persons but none of you intend (merely by opening this account) to create any right of survivorship in any other person. We encourage you to agree and tell us in writing of the percentage of the deposit contributed by each of you. This information will not, however, affect the "number of endorsements" necessary for withdrawal.

**Revocable Trust and Pay-on-Death Account (subject to this agreement)**— . . . .

**Trust Account Subject to Separate Agreement**—. . . .

(Emphasis added.) Butler signed the first certificate in the series.

If a bank account is designated as a joint account with a right of survivorship, and if one of the joint owners dies, the account "belong[s] to the surviving party or parties as against the estate of the decedent *unless there is clear and convincing evidence of a different intention,* or there is a different disposition made by a valid will as herein provided, specifically referring to such account." Minn.Stat. § 524.6–204(a) (2008) (emphasis added).[2] Respondents concede that there is no "different disposi-

2. The legislature also has provided that a financial institution's use of certain language in the documents creating a joint account with a right of survivorship is "conclusive evidence of the intent of the depositor, in the absence of fraud or misrepresentation ... [or] other

disposition made by will." Minn.Stat. § 524.6–213, subd. 1 (2008). Kissack has not attempted to invoke section 524.6–213, subdivision 1, and neither party cited that provision. Thus, the opinion of the court should

tion made by a valid will ..., specifically referring to such account." *Id.* Thus, the sole question is whether there is clear and convincing evidence that Butler had a "different intention," *id.*, that is, an intention different from his expressed intention to create joint accounts with rights of survivorship.

At trial, respondents introduced no evidence that Butler had an intention for the disposition of the joint accounts upon his death other than what is expressed on the face of the five certificates. Respondents were unable to offer any such evidence because no one within the family knew of the existence of the joint accounts during Butler's lifetime and because respondents did not call as a witness the banker who assisted Butler in establishing the accounts. Consequently, no trial witness testified that Butler ever said that he had an intention different from what is shown on the face of the five certificates, and there is no evidence that Butler ever expressed any such intention in writing. The legislature has provided a means by which Butler, during his lifetime, could have changed his original designation of the account "by written order given ... to the financial institution to change the form of the account or to stop or vary payment under the terms of the account." Minn. Stat. § 524.6–205 (2008). Butler, however, never made such a change prior to his death on February 1, 2008.

Respondents' evidence is insufficient because it simply is not evidence of Butler's actual intention. Respondents' evidence is nothing more than factors that respondents believe Butler should have considered, or reasons why, in respondents' view, Butler should not have decided to establish joint accounts. Butler presumably was aware of those factors and rea-

sons yet, nonetheless, elected to establish joint accounts with rights of survivorship. Thereafter he never elected to change the designations. The evidence concerning the general provisions of Butler's will, which he executed seven years before he established the joint accounts, is insufficient because the legislature has expressly required that evidence of "a different disposition made by a valid will" must "specifically refer[ ]" to the joint accounts. Minn.Stat. § 524.6–204(a). As stated above, respondents concede that Butler's will does not make specific reference to the five joint accounts.

To affirm the jury's verdict in this case is essentially to allow other persons—the heirs under a will and a panel of jurors—to second-guess a decedent's deliberate choice of account designation without regard for what the decedent actually intended. In this way, the opinion of the court infringes on a person's freedom to make a disposition of property during his or her lifetime with confidence that the disposition will be effected after his or her death. A joint account with a right of survivorship "is ... sometimes referred to as a 'poor man's will' " because it is a " 'simple, inexpensive method of passing funds in the account from a deceased joint owner to the surviving joint owner, avoiding the necessity of probate proceedings.' " *Enright v. Lehmann,* 735 N.W.2d 326, 332 (Minn.2007) (quoting *Deutsch, Larrimore & Farnish, P.C. v. Johnson,* 577 Pa. 637, 848 A.2d 137, 142–43 (2004)). If a person has made a facially valid written designation of a joint account with a right of survivorship, and if the person never has expressed any contrary intention, the written designation should be impervious to attack at a time when the person is unavailable to defend and reaffirm the desig-

---

not be interpreted to express any views as to whether the language used by the bank in Butler's certificates of deposit satisfies the

requirements of section 524.6–213, subdivision 1(b).

nation. In short, the opinion of the court injects too much uncertainty into this area of the law and is likely to disrupt settled expectations.

The opinion of the court relies on *Rutchick v. Salute*, 288 Minn. 258, 179 N.W.2d 607 (1970), to support its conclusion that respondents' evidence is sufficient. The *Rutchick* opinion, however, was issued before the enactment of the Multiparty Accounts Act (MPAA), which includes section 524.6–204(a). *See* 1973 Minn. Laws, ch. 619, § 1, at 1472, § 5, at 1475; *see also* 1994 Minn. Laws, ch. 472, § 63, at 415 (renumbering statute). The supreme court has noted that, prior to the adoption of the MPAA, Minnesota caselaw was " 'scant and conflicting' " as to whether ownership of joint accounts was determined by a contract theory, a gift theory, a trust theory, or a joint tenancy theory. *Enright*, 735 N.W.2d at 331 (quoting Note, *The "Poor Man's Will" Gains Respectability: Using the Minnesota Multi–Party Accounts Act*, 1 Wm. Mitchell L. Rev. 48, 50 (1974)). In *Rutchick*, the supreme court applied the gift theory by analyzing whether the decedent intended to make an *inter vivos* gift to the other joint account owner. 288 Minn. at 261–65, 179 N.W.2d at 610–12. But the MPAA subsequently "reject[ed] gift, trust, and joint tenancy theories of ownership as used at common law, and adopt[ed] the contract theory." Note, *supra*, at 57–58 (relied on for this point by *In re Conservatorship of Gobernatz*, 603 N.W.2d 357, 360 (Minn.App. 1999), *review denied* (Minn. Feb. 15, 2000)). As one commentator noted at the time, "This is a major change from prior Minnesota law...." Note, *supra*, at 61. Furthermore, in *Rutchick*, the burden of proof was on the surviving joint account owner to prove that the decedent had made a gift. 288 Minn. at 261–65, 179 N.W.2d at 610–12. Under the MPAA, however, the burden is on the person or persons challenging the survivorship desig-

nation to prove a different intention by clear and convincing evidence. Minn.Stat. § 524.6–204(a); *In re Estate of Grotta*, 386 N.W.2d 319, 320 (Minn.App.1986).

The supreme court has recognized that the legislature's enactment of the MPAA "may abrogate common law doctrines by express wording or necessary implication." *Enright*, 735 N.W.2d at 334 (quotation omitted). It is apparent that *Rutchick* is inconsistent with section 524.6–204(a) and, thus, that the legislature abrogated *Rutchick* when it adopted the MPAA. This conclusion is buttressed by the fact that the supreme court has cited *Rutchick* only three times but never in a case arising after the effective date of the MPAA. *See Lerbakken v. Twin City Fed. Sav. & Loan Ass'n*, 304 Minn. 297, 302, 230 N.W.2d 596, 599 (1975); *Stribling v. Fredericks, Clark & Co.*, 300 Minn. 525, 526, 219 N.W.2d 93, 95 (1974); *Erickson v. Kalman*, 291 Minn. 41, 45, 189 N.W.2d 381, 384 (1971). Thus, the opinion of the court erroneously relies on *Rutchick* to support its conclusion that respondents' evidence is sufficient to prove that Butler did not intend to create a right of survivorship in Kissack.

The opinion of the court also is inconsistent with opinions from other states that apply similar statutes. Our supreme court has stated that Minnesota's version of the MPAA should be interpreted consistently with the caselaw in "other jurisdictions that have faced the same issue under the Uniform Probate Code." *Savig v. First Nat'l Bank*, 781 N.W.2d 335, 346 (Minn. 2010). Thus, we note that, in *Decker v. Zengler*, 883 N.E.2d 839 (Ind.Ct.App.2008), the Indiana Court of Appeals held, as a matter of law, that four siblings who were the heirs under a will did not have sufficient evidence to prove that the decedent, their mother, had a different intention when she established several joint accounts with rights of survivorship in another child. *Id.* at 841–45. The four siblings

who challenged the survivorship designations were not aware of the joint accounts during their mother's lifetime, and no witness was able to testify about the decedent's actual intent. *Id.* at 842–43. The court thus held that the four siblings had no evidence that could overcome the statutory presumption of survivorship. *Id.* at 845.

In similar circumstances, courts in other states have consistently upheld the statutory presumption of survivorship when there was no evidence that the decedent actually had a different intention. *See In re Estate of Anderson,* 988 A.2d 977, 979–80 (Me.2010) (reversing trial court's determination that joint accounts with survivorship rights should become property of estate according to will); *see also Evancoe v. Evancoe (In re Estate of Evanco),* 955 P.2d 525, 527–28 (Alaska 1998) (affirming trial court's dismissal of petition challenging survivorship rights in joint investment accounts and certificates of deposit); *Barham v. Jones,* 98 N.M. 195, 647 P.2d 397, 399 (1982) (affirming trial court's finding recognizing joint account owner's survivorship rights in joint bank accounts); *Thomas v. Thomas (In re Estate of Thomas),* 532 N.W.2d 676, 680–81 (N.D.1995) (affirming summary judgment recognizing joint account owner's survivorship rights in joint bank accounts). There is no precedent for the proposition that the MPAA's statutory presumption of survivorship rights may be rebutted by evidence that the decedent should have made a different account designation, without evidence that the decedent actually intended a different account designation.

For these reasons, I would reverse the judgment of the district court and remand for entry of judgment in favor of Kissack.