In re the ESTATE OF Patrick
W. BUTLER, Deceased.

No. A09–1208.

Supreme Court of Minnesota.

Sept. 21, 2011.

William A. Erhart, Erhart & Associates, L.L.C., Anoka, Minnesota, and John M. Huberty, Huberty Law Firm, Anoka, Minnesota, for appellant Maureen Kissack.

Kyle T. Wermerskirchen, Steven H. Snyder & Associates, Maple Grove, Minnesota, for respondents Sheila Montognese, Bridget Beaudry, Lori France, Sandra Taverna, John Sandahl, and Steven Sandahl.

Stephen M. Baker, Walker, Minnesota, for the Estate of Patrick W. Butler.

OPINION

STRAS, Justice.

This case presents the question of whether the respondents presented sufficient evidence to overcome the statutory presumption in favor of survivorship rights for joint accounts under the Minnesota Multiparty Accounts Act. *See* Minn.Stat. §§ 524.6–201 to–214 (2010). Because Minn.Stat. § 524.6–204(a) requires that the evidence offered to overcome the statutory presumption must "specifically refer[ ]" to the joint accounts at issue, we conclude that the respondents failed to present sufficient evidence to satisfy their burden of proof. We therefore reverse the district court and remand for entry of judgment as a matter of law in favor of the appellant.

I.

Patrick W. Butler died in 2008, nearly 11 years after the death of his second wife, Viola Sandahl. Butler's will left his "entire estate in equal shares" to his three natural daughters and four surviving stepchildren. Appellant Maureen Kissack is the estate's personal representative and one of Butler's natural daughters. The respondents are Butler's two other natural daughters and four surviving stepchildren.

At the time of his death, Butler owned a home, a lake cabin, some land, a car, several bank accounts, and two life insurance policies. In addition, Butler owned five certificates of deposit (CDs) totaling approximately $100,000. Butler opened the CDs with Woodland Bank in 2000 and renewed them in 2003. It is undisputed that Butler personally opened each of the five CDs, designated Kissack as joint owner with the right of survivorship, and signed the necessary bank forms.

The CDs state that they were issued to "Patrick Butler or Maureen J. Kissack." With an "x" clearly marking the relevant

box, each of the CDs indicates that it is "intend[ed]" to be a "Joint Account—With Survivorship (and not as tenants in common)." No other ownership option listed on the CDs—such as "Individual" or "Joint Account—No Survivorship (as tenants in common)"—is marked. The second page of each of the CDs explains the various account ownership options. The description for "Joint Account With Survivorship (And Not As Tenants In Common)" states in relevant part: "Such an account is owned by two or more persons. Each of you intend that upon your death the balance in the account (subject to any previous pledge to which we have consented) will belong to the survivor(s)." On the bottom right corner of the first page, the document contains the printed statement: **"SIGNATURES: I AGREE TO THE TERMS STATED ON PAGE ONE AND PAGE TWO."** Either Kissack's or Butler's signature appears immediately thereafter.[1]

Following Butler's death, the district court granted Kissack's petition to probate Butler's will and appointed her as the personal representative of Butler's estate. Kissack consulted with her personal attorney and the estate's attorney, both of whom advised her that, with the exception of a CD pledged as collateral for Butler's home, the CDs were nonprobate assets that she now owned, based upon her status as the surviving joint owner. On that advice, Kissack redeemed several of the CDs and withdrew the proceeds.

Kissack did not include any of the CDs in the inventory of estate assets filed with the district court in her capacity as personal representative of the estate. One of the respondents petitioned to remove Kissack as personal representative on the basis that Kissack had "failed to account for substantial Estate assets" and had "prematurely distributed Estate assets prior to filing an Inventory with the Court." After an evidentiary hearing at which several of Butler's children and surviving stepchildren testified, the district court denied the petition to remove Kissack. In the same order, the district court ruled that the CDs were assets of Butler's estate and subject to probate.

Kissack moved for amended findings or a new trial, arguing that she had not received adequate notice that the hearing on the petition to remove her as personal representative of the estate would also resolve ownership of the CDs. The district court granted Kissack's motion and ordered a jury trial.

At trial, the respondents presented testimony that Kissack was not Butler's "favorite" daughter and thus there was no "reason why [Butler] would want ... Kissack to have a larger share or to have all of the bank accounts." The respondents elicited testimony from Kissack that she had referred to the CDs as "Dad's CD" accounts, that the interest earned on the CDs was paid solely to Butler during his lifetime, and that Kissack had no knowledge of the existence of the CDs before Butler's death. The respondents also presented evidence that the CDs were funded in part by the insurance proceeds from a fire that destroyed a cabin belonging to Sandahl prior to her marriage to Butler. According to the respondents, the entire estate "should be divided equally amongst the children" and stepchildren because "[t]hat's what [Butler] would have wanted."

Over Kissack's objection, the court admitted Butler's will into evidence. The

---

1. Kissack endorsed several of the CDs in March 2008, after Butler's death, when she withdrew the proceeds. The parties do not dispute, however, that Butler personally signed the CDs in 2000 when he first opened them, and again in 2003 when he renewed them.

respondents argued that Article IV of Butler's will—the operative paragraph of which left Butler's "entire estate in equal shares" to Kissack and the respondents—demonstrated that Butler wanted all of his assets, including the CDs, to be divided equally among his children and stepchildren. Several of the respondents also testified that, because Butler's and Sandahl's wills were materially identical and signed on the same day, only an equal distribution to each of the respondents would reflect Butler's and Sandahl's intended disposition of assets. The respondents claimed, as a result, that a gift to Kissack outside of the provisions of the will would have been "inappropriate."

Kissack's evidence, by contrast, showed that Butler had a "falling out" with his two other natural daughters in the months leading up to his death. In fact, Kissack testified that Butler had excluded one of his natural daughters and all of his stepchildren as beneficiaries of his life insurance policy. Kissack further testified that she was Butler's confidant, that Butler looked to her for "support and friendship," and that she maintained a close relationship with Butler until his death.

The branch manager of Woodland Bank testified that, in the bank's view, the CDs were opened as joint accounts with the right of survivorship between Butler and Kissack, meaning that Kissack owned the CDs after Butler's death. The manager stated that, although he was not personally present when Butler opened the CDs, the bank's policy was to explain each of the ownership options. With respect to the CD used to secure the loan on Butler's home, the manager testified that he informed Butler that the lowest cost option was to use one of the CDs as collateral for the loan. According to the bank manager, Butler elected to secure the loan with one of the CDs because it was "the cheapest and the simplest" option: it resulted in a lower interest rate and did not require a property appraisal or title search.

The jury returned a verdict in favor of the respondents. Kissack twice moved for judgment as a matter of law, once at the close of the respondents' case and again after the trial. Kissack also requested a new trial. The district court denied each of the motions. In denying Kissack's post-trial motion for judgment as a matter of law or a new trial, the court held that there was sufficient evidence for the jury to conclude by clear and convincing evidence that Butler intended the CDs to be divided equally among all of his children and stepchildren. The court concluded the jury could have inferred from the testimony that "there was no special relationship between [Kissack] and the decedent that would have justified a substantially greater portion of the estate going to her rather than the other children or stepchildren." The court also relied on the evidence establishing that Butler used one of the CDs as security for an asset of the estate.

Kissack appealed, arguing the district court erred in denying her motions for judgment as a matter of law, in its instructions to the jury, and in admitting irrelevant evidence at trial. A divided court of appeals affirmed. *In re Estate of Butler*, 782 N.W.2d 829 (Minn.App.2010). With respect to the sufficiency of the evidence, the court of appeals held that "[a]lthough there was no direct evidence of Butler's intent with respect to the CDs in this case, ample circumstantial evidence supported the jury's verdict." *Id.* at 835. In dissent, Judge Johnson argued the "evidence [was] insufficient to prove that Butler intended that the joint accounts should become the property of his estate upon his death." *Id.* at 837 (Johnson, J., dissenting). We granted Kissack's petition for review.

## II.

In addressing Kissack's claim that the respondents presented insufficient evidence to overcome the statutory presumption in favor of survivorship rights for joint accounts, the threshold question is the proper legal standard to be applied. Answering that question requires us to interpret the Minnesota Multiparty Accounts Act ("MPAA"), Minn.Stat. §§ 524.6–201 to–214 (2010), which governs multiple party accounts like the CDs at issue here. Determining the appropriate standard thus requires interpretation of a statute, which is a legal question subject to de novo review. *See, e.g., State v. Leathers,* 799 N.W.2d 606, 608 (Minn.2011).

The provision of the MPAA at issue here, Minn.Stat. § 524.6–204(a), provides, in relevant part, as follows:

> Sums remaining on deposit at the death of a party to a joint account belong to the surviving party or parties as against the estate of the decedent unless there is clear and convincing evidence of a different intention, or there is a different disposition made by a valid will as herein provided, specifically referring to such account.

The preliminary language in section 524.6–204(a) establishes a statutory presumption that "sums remaining on deposit" at the time of death of a joint owner "belong to the surviving party or parties as against the estate of the decedent." But the statutory presumption in favor of ownership by the surviving joint owner is not absolute; the remainder of section 524.6–204(a) describes the means by which the presumption can be overcome. Specifically, the presumption can be overcome by: (1) "clear and convincing evidence of a different intention"; or (2) "a different disposition made by a valid will as herein provided." Minn.Stat. § 524.6–204(a).

The two phrases describing the means for overcoming the statutory presumption are immediately followed in the statute by the qualifying phrase, "specifically referring to such account." *Id.* The interpretive question is whether the qualifying phrase modifies only the immediately-antecedent phrase—"a different disposition made by a valid will as herein provided"—or both of the antecedent phrases. Under the latter interpretation, the qualifying phrase would modify *both* "a different disposition made by a valid will as herein provided" and "clear and convincing evidence of a different intention." We apply rules of grammar and give words and phrases "their common and approved usage" in determining which of the two interpretations is correct. Minn.Stat. § 645.08(1) (2010); *see also Larson v. State,* 790 N.W.2d 700, 703 (Minn.2010).

The better interpretation of section 524.6–204(a) is that the qualifying phrase, "specifically referring to such account," modifies both of the antecedent phrases. It is true that, pursuant to the grammatical rule of the last antecedent, a qualifying phrase ordinarily modifies only the noun or phrase it immediately follows (here, the phrase regarding dispositions by will). *See Larson,* 790 N.W.2d at 705; *Woodhall v. State,* 738 N.W.2d 357, 361–62 (Minn. 2007) (citing *Barnhart v. Thomas,* 540 U.S. 20, 26, 124 S.Ct. 376, 157 L.Ed.2d 333 (2003)). The grammatical rule of the last antecedent, however, "is not an absolute and can assuredly be overcome by other indicia of meaning." *Barnhart,* 540 U.S. at 26, 124 S.Ct. 376. Here, two characteristics of section 524.6–204(a) strongly favor the interpretation in which the qualifying phrase modifies both of the antecedent phrases.

First, a comma separates the qualifying phrase from both of the antecedent phrases, which provides some "[e]vidence that

[the] qualifying phrase is supposed to apply to all antecedents instead of only to the immediately preceding one." Norman J. Singer & J.D. Shambie Singer, 2A *Statutes and Statutory Construction* § 47.33 (7th ed.2007). Second, and more importantly, if the qualifying phrase "specifically referring to such account" modifies only the phrase "a different disposition made by a valid will as herein provided," then the qualifying phrase would be superfluous. That is because section 524.6–204(d), another provision in the same statute, already requires that a disposition of a joint account by will must specifically refer to the joint account in order to be effective.[2] Therefore, if the qualifying phrase "specifically referring to such account" in section 524.6–204(a) is to have any meaning, it must also modify the antecedent phrase "clear and convincing evidence of a different intention." *See* Minn.Stat. § 645.16 (2010) ("Every law shall be construed, if possible, to give effect to all its provisions."); *Vlahos v. R&I Constr. of Bloomington, Inc.*, 676 N.W.2d 672, 679 (Minn. 2004) (citing *Amaral v. St. Cloud Hosp.*, 598 N.W.2d 379, 384 (Minn.1999)) (stating that, when possible, no word, phrase, or sentence of a statute should be deemed superfluous).

We therefore conclude that a surviving owner of a joint account is entitled to the funds in the account upon the death of the other joint owner, as against the decedent's estate, unless there is clear and convincing evidence of a different intention or there is a different disposition made by a valid will, either of which must specifically refer to the joint account.

## III.

Now that we have determined the appropriate legal standard under section 524.6–204(a) for overcoming the statutory presumption in favor of survivorship rights for joint accounts, we turn to the question of whether the respondents presented clear and convincing evidence in this case to overcome the presumption.[3] The jury returned a verdict in favor of the respondents, and the district court twice denied Kissack's motion for judgment as a matter of law, once following the close of the respondents' evidence and again after trial. The district court denied Kissack's motions

---

2. Specifically, Minn.Stat. § 524.6–204(d) provides:

   *A right of survivorship arising from the express terms of the account, or under this section, or under a P.O.D. payee designation, may be changed by specific reference by will,* but the terms of such will shall not be binding upon any financial institution unless it has been given a notice in writing of a claim thereunder, in which event the deposit shall remain undisbursed until an order has been made by the probate court adjudicating the decedent's interest disposable by will.

   (Emphasis added.) *See also* Minn.Stat. § 524.6–213, subd. 1 (allowing the disposition of a joint account by will "as provided in" section 524.6–204(d)). Indeed, the language in section 524.6–204(a) regarding will dispositions explicitly incorporates the other requirements of section 524.6–204 "as herein

provided," which includes the requirement in section 524.6–204(d), the above-quoted provision, that a will must include a "specific reference" to a joint account to create an enforceable, alternative disposition of a joint account. *See* Minn.Stat. § 524.6–204(a) (discussing "a different disposition made by a valid will *as herein provided* . . . ." (emphasis added)).

3. As to the alternative means of overcoming the statutory presumption in favor of survivorship rights for joint accounts, the respondents' evidence fails to establish "a different disposition made by a valid will as herein provided, specifically referring to such account." Minn.Stat. § 524.6–204(a). While Butler's will specifically references the disposition of his "entire estate," including "insurance policies and checking accounts," it is undisputed that the will does not include a specific reference to the CDs at issue here.

because it found that there was sufficient evidence from which the jury could have concluded by clear and convincing evidence that Butler intended to divide the proceeds of the CDs equally among all of his children and stepchildren. We disagree.

We review de novo a district court's decision to deny a motion for judgment as a matter of law. *See Langeslag v. KYMN, Inc.*, 664 N.W.2d 860, 864 (Minn. 2003). In reviewing the district court's denial of a motion for judgment as a matter of law, we apply the same standard as the district court and view the evidence in the light most favorable to the nonmoving party. *See Bahr v. Boise Cascade Corp.*, 766 N.W.2d 910, 919 (Minn.2009). Pursuant to Minn. R. Civ. P. 50.01, a court may grant judgment as a matter of law if "a party has been fully heard on an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue."

In this case, the district court and the court of appeals applied an incorrect legal standard in determining that Kissack was not entitled to judgment as a matter of law. Rather than considering only the evidence "specifically referring" to the CDs, as required by section 524.6–204(a), the district court and the court of appeals considered all of the evidence in the record in assessing whether the respondents presented clear and convincing evidence of a "different intention" by Butler. Under the proper legal standard, there must be clear and convincing evidence of a different intention that specifically refers to the joint account. Applying the correct standard, the only possible conclusion is that the respondents' evidence provides a legally insufficient basis from which a reasonable

jury could have concluded that Butler had an intention other than for Kissack to receive the proceeds of the CDs upon his death.

Much of the evidence presented at trial did not specifically refer to the disputed CDs. For example, the most powerful evidence presented by the respondents—that Butler's will left his "entire estate in equal shares" to his children and stepchildren—did not specifically reference the CDs. Similarly, the respondents' testimony that Butler had no reason to favor Kissack over his other children and stepchildren did not involve a specific reference to the CDs. Indeed, none of the respondents testified that Butler *ever* mentioned the CDs to them, much less that he communicated his intended disposition of the proceeds of the CDs after his death.

Other evidence, while specifically referring to the CDs, was not probative of Butler's intentions. For instance, Kissack's testimony that *she* referred to the CDs as "Dad's CD" accounts was not evidence of *Butler's* intention for the CDs after his death. Similarly unpersuasive was the fact that Butler funded the CDs with proceeds of an insurance policy on a cabin previously owned by Sandahl because it again provides little guidance in determining Butler's intention for the CDs following his death. In the final analysis, the respondents' case rests almost entirely on Butler's use of the CDs to secure a loan on a home that eventually became part of the probate estate. However, that evidence, standing alone, is legally insufficient to meet the statutory standard of clear and convincing · evidence set forth in section 524.6–204(a).[4]  *See Gassler v. State*, 787

---

4. The respondents nonetheless argue they met their burden of proof at trial under *Rutchick v. Salute*, 288 Minn. 258, 179 N.W.2d 607 (1970). In *Rutchick*, we affirmed a finding by the district court that the decedent did not intend to make an inter vivos gift of a savings certificate to the appellant, despite the fact that the decedent named the appellant as the

N.W.2d 575, 583 (Minn.2010) ("In order to prove a claim by clear and convincing evidence, a party's evidence should be unequivocal, intrinsically probable and credible, and free from frailties.").

## IV.

For the foregoing reasons, we conclude that the respondents failed to produce sufficient evidence from which a reasonable jury could have concluded by clear and convincing evidence that Butler had a "different intention" than to have the surviving joint owner, Maureen Kissack, receive the proceeds of the CDs upon Butler's death. We therefore reverse the court of appeals and remand to the district court with instructions to enter judgment as a matter of law in favor of Kissack.[5]

Reversed and remanded.

joint owner of the certificate. *Id.* at 264–65, 179 N.W.2d at 611–12. We decided *Rutchick,* however, prior to Minnesota's adoption of the Multiparty Accounts Act, which now provides a comprehensive statutory scheme under which the statutorily-designated form of the account, not common law gift theory, determines whether there is a right of survivorship. *See* Act of May 23, 1973, ch. 619, §§ 1–16, 1973 Minn. Laws 1472–80 (adopting the Minnesota Multiparty Accounts Act); *Enright v. Lehmann,* 735 N.W.2d 326, 332 (Minn. 2007) (explaining that the Legislature enacted the MPAA in response to "uncertainty in the law of joint accounts"). Accordingly, the standard set forth in *Rutchick* is no longer applicable when determining the ownership of funds in joint accounts.

5. Kissack argues for the first time that, pursuant to Minn.Stat. § 524.6–213, subd. 1, the form designating the CDs as joint accounts with right of survivorship provided "conclusive evidence" of Butler's intention to create a survivorship account. We express no opinion about the applicability of Minn.Stat. § 524.6–213, subds. 1 and 1(b), to the facts of this case because Kissack has failed to preserve the issue for appeal. *See* Minn. R. Civ.App. P. 103.04 ("The scope of review afforded may be affected by whether proper steps have been taken to preserve issues for review on appeal...."); *Republic Nat'l Life Ins. Co. v. Lorraine Realty Corp.,* 279 N.W.2d 349, 355 n. 2 (Minn.1979).

Because we reverse the district court's decision to deny Kissack's motion for judgment as a matter of law, we also do not reach Kissack's argument that the district court abused its discretion by admitting irrelevant evidence at trial.