In re ESTATE OF Viva Bertha
HANDY, Decedent.

No. A03–95.

Court of Appeals of Minnesota.

Dec. 9, 2003.

Daniel A. Birkholz, Monica S. Rye, Birkholz & Rye, St. James, MN, for appellants Raymond, David, and Matthew Handy.

Mike Hatch, Attorney General, David A. Rowley, Assistant Attorney General, St. Paul, MN, for respondent State of Minnesota.

Considered and decided by KALITOWSKI, Presiding Judge, HALBROOKS, Judge, and STONEBURNER, Judge.

## OPINION

STONEBURNER, Judge.

Appellants, the child and grandchildren of now deceased medical-assistance recipient Viva Bertha Handy, assert that the district court erred by granting summary judgment to respondent Department of Human Services on its claim against Viva Bertha Handy's estate to recover medical-assistance payments for her nursing home care. Because the district court correctly determined that appellants did not continuously reside in Viva Bertha Handy's home from the date of her institutionalization as required under Minn.Stat. § 256B.15, subd. 4 (2000), to limit the

state's recovery to nonhomestead assets, we affirm.

## FACTS

In the spring of 1978, Raymond Handy, the only child of Viva Bertha Handy (Viva Handy), moved, with his wife and sons, Matthew and David, into a mobile home located next to Viva Handy's farmhouse on her 89–acre homestead in Cottonwood County.[1] Viva Handy was subsequently diagnosed with senility, likely due to the onset of Alzheimer's disease. Viva Handy needed extensive assistance to remain in her home until she was institutionalized in September 1988. It is undisputed that appellants physically resided on the homestead and provided the care that permitted Viva Handy to remain at home rather than in an institution. After Viva Handy went to live in the nursing home, the farmhouse became uninhabitable beyond repair.

For economic reasons, Raymond Handy stopped farming the homestead in 1996, after which the farmland was rented. By 1997, Matthew and David Handy were no longer living on the homestead. David Handy has not physically resided on the homestead since 1993, when he enlisted in the armed services. He remains on active duty and lists the homestead as his permanent address.

Raymond Handy and his wife moved away from the homestead for the winter months in November 1997 because they could not afford to heat the farmhouse, which was necessary in order to provide the mobile home with water in the winter. In April 1998, they returned to the homestead. They moved to town again in December 1998 and returned to the homestead in May 1999. The water pump broke in the fall of 1999 and, for economic reasons, was not repaired. Raymond Handy and his wife moved to town for the winter of 1999 and did not return to live on the homestead.

Although Matthew Handy stayed at the mobile home on the homestead from August 2000 to February 2001, appellants admit that the mobile home was, at that time, and remains essentially uninhabitable and needs repairs that would cost $2,000 to $2,500 to make it habitable. Raymond Handy always intended to return to the homestead once he had saved enough money to repair the mobile home and water pump.

Raymond Handy maintains the homestead address on his driver's license. He has paid the electric bill for the homestead and has kept the property insured. His personal checks list the homestead as his address. But Raymond Handy has used his town address on other documents, including pay stubs and benefit applications.

Viva Handy died on October 27, 2000. Her will bequeathed the homestead to Matthew and David Handy, subject to a life estate in Raymond Handy. Respondent paid medical assistance in the amount of $212,877.73 toward Viva Handy's nursing-home care before her death. After Viva Handy's death, respondent filed a priority claim against her estate to recover the medical-assistance payments. Appellants assert that under Minn.Stat. § 265B.15, subd. 4 (2000), respondent's medical-assistance claim is limited to Viva Handy's nonhomestead assets. The district court granted the county's motion for summary judgment and this appeal followed.

1. For summary judgment purposes, respondents agree that appellants lived in Viva Handy's home.

## ISSUES

1. Under Minn.Stat. § 256B.15, subd. 4 (2000), must a child or grandchild have physically resided continuously at the medical-assistance recipient's home from the date of the recipient's institutionalization to limit the state's recovery of medical-assistance payments to nonhomestead assets of the recipient?

2. Does the Soldiers' and Sailors' Civil Relief Act require a finding that David Handy has continuously resided in the homestead since the date of Viva Handy's institutionalization, within the meaning of Minn.Stat. § 256B.15, subd. 4?

3. Are respondent's claims barred by the doctrine of res judicata?

## ANALYSIS

### I.

On appeal from summary judgment, we ask whether there are any genuine issues of material fact and whether the district court erred in its application of law. *State by Cooper v. French,* 460 N.W.2d 2, 4 (Minn.1990). Appellants argue that the district court erred in interpreting Minn. Stat. § 256B.15, subd. 4 (2000), and therefore misapplied the law.

With some exceptions, the state may recover medical assistance payments made for a person's care from the person's estate. Minn.Stat. 256B.15, subd. 1a (2000). One of the exceptions limits the state's recovery to the value of nonhomestead property:

If the decedent who was single, ... is survived by one of the following persons, a claim exists against the estate in an amount not to exceed the value of the nonhomestead property included in the estate:

. . . .

(b) a son or daughter or a grandchild who resided in the decedent medical assistance recipient's home for at least two years immediately before the parent's or grandparent's institutionalization and continuously since the date of institutionalization, and who establishes by a preponderance of the evidence having provided care to the parent or grandparent who received medical assistance, that the care was provided before institutionalization, and that the care permitted the parent or grandparent to reside at home rather than in an institution.

Minn.Stat. § 256B.15, subd. 4.

■ The parties do not dispute that appellants resided on Viva Handy's property for the two years immediately before her institutionalization and the care they provided permitted Viva Handy to reside at home. But respondent alleges that appellants have not resided continuously on the property since the date of Viva Handy's institutionalization because appellants stopped living on the homestead by at least the fall of 1999.

The district court granted the county's motion for summary judgment, stating that in order to fulfill the statutory requirement, "one must, of course, keep the residence as their home throughout the required time period." The district court held that "by not returning to the homestead, for whatever reason, Mr. Handy effectively broke the cycle of 'continuous' residence.'" The district court found that Raymond Handy intended to keep the homestead as his permanent residence, but concluded that the statute's residency requirement could only logically be met through physical presence.

■ When the district court grants summary judgment based on the application of a statute to undisputed facts, the result is a legal conclusion, reviewed de novo by the appellate court. *Lefto v.*

*Hoggsbreath Enters. Inc.,* 581 N.W.2d 855, 856 (Minn.1998). "When interpreting a statute, we first look to see whether the statute's language, on its face, is clear or ambiguous. A statute is only ambiguous when the language therein is subject to more than one reasonable interpretation." *Am. Family Ins. Group v. Schroedl,* 616 N.W.2d 273, 277 (Minn.2000) (citation omitted). The statute does not define "reside" and no prior Minnesota case has interpreted the meaning of "resided ... continuously since the date of institutionalization," as used in Minn.Stat. § 256B.15, subd. 4.

■ Appellants argue that although Raymond Handy was not living on the homestead at the time of Viva Handy's death in October 2000, Matthew Handy was living there and remained there until February 2001, thereby satisfying the "continuous residence" requirement under Minn.Stat. § 256B.15, subd. 4(b). But no one lived on the homestead from the winter of 1999 until Matthew Handy went to stay there in August 2000. The statute does not provide that various family members may combine their residencies to constitute continuous residence. And Matthew Handy did not live on the homestead from 1997 through July 2000. The district court did not err by rejecting this argument.

Appellants characterize Raymond Handy's absences from the homestead as temporary and emphasize that he always intended the homestead to be his primary residence. Appellants argue that, just as temporary absence does not alter one's domicile when the person's intent to return to his permanent home remains unchanged, temporary absence should not be interpreted to interrupt Raymond Handy's continuous residence at Viva Handy's homestead when he intended to return, once he had the funds to repair the mobile home and pump. Appellants cite cases in which residence and domicile have been held to be synonymous. They rely on voting and election cases to argue that appellants' have maintained the homestead as their legal residence and in doing so meet the requirement of Minn.Stat. § 256B.15, subd. 4. We disagree.

Unlike the word "domicile," the word "resident" has not gained a generally accepted meaning. It appears to us that the best rule for determining what the word 'resident' means in a given statutory enactment is found in the case of *Bechtel v. Bechtel,* 101 Minn. 511, 514, 112 N.W. 883, 884, 12 L.R.A., N.S., 1100. The court there stated: " * * * As employed in statutory enactments, its meaning, as interpreted by the courts [the meaning of the word 'resident'], varies as the legislative intent appears, and in harmony with the subject-matter, object, and purpose of the statute."

*In re Kowalke's Guardianship,* 232 Minn. 292, 296, 46 N.W.2d 275, 279 (Minn.1950). It is from the statute and subject matter that we must determine the meaning of "reside" in this case.

The Minnesota Department of Human Services, through rules, has defined "residence," as it applies to health care programs, as "the place a person uses, and intends to continue to use for the indefinite future, as his or her primary dwelling place." Minn. R. 9505.0015, subp. 42 (2001). Respondent argues that the use of the singular "residence" means that a person who owns more than one home can only have one primary residence for public assistance program purposes. And Section 0014.12 of the Minnesota Department of Human Services' policy manual contained in the record requires that a county look to a list of indicators of primary residence if a person has more than one residence. The provision instructs the county

worker to "[s]top at the 1st circumstance that applies; do not consider the remaining situations." The "circumstances" include, in order:

1. The residence where their spouse lives

2. The residence which is the only one where they incur shelter costs

3. The residence where they eat a majority of meals

4. The residence where they spend a majority of time

5. The residence which is the only one where another person would be part of the same unit (sibling, parent)

6. The residence they choose.

Although the policy manual and rule are not dispositive in this case, they give some guidance about how the term residence is defined in the subject area of qualification for benefits. Under these rules, the homestead was not Raymond Handy's residence after the fall of 1999, and was not David or Matthew Handy's residence continuously from the date of their grandmother's institutionalization.

Minn.Stat. § 256B.15, subd. 4, uses the term "reside" twice: first to require that a child or grandchild *"resided . . . in the . . .* recipient's home . . . continuously since the date of institutionalization," and second, to require that "the care permitted the parent or grandparent to *reside* at home rather than in an institution" (emphasis added). The second use can only refer to physical presence in the home, demonstrating that the legislature plainly used "reside" in this statute to mean physical presence. Because it is undisputed that no individual appellant continuously physically resided at the homestead from the date of Viva Handy's institutionalization, the district court correctly concluded that respondent's recovery of medical-assis-

tance payments from Viva Handy's estate is not limited to nonhomestead assets.

Appellants argue that a "strict" reading of the statute operates to deny them their family farm and is inconsistent with the purpose and intent of the statute. Although we are not unsympathetic to appellants' situation, the plain language of the statute demonstrates intent to protect certain family members from losing their home, not intent to protect an expectation of an inheritance.

## II.

■ Appellants argue that because David Handy is on active duty with the armed services, the Soldiers' and Sailors' Civil Relief Act of 1940, 50 U.S.C.A App. §§ 501–591 (1990 & Supp.2003), (SSCRA) protects his residency status during his military service thereby satisfying the "reside . . . continuously" requirement of Minn.Stat. § 256B.15, subd. 4, as to David Handy. Respondents argue that appellants cannot raise this argument on appeal because they only raised the SSCRA in district court procedurally, as requiring a continuance. We agree. This court generally will not consider issues not raised in the district court. *Thiele v. Stich*, 425 N.W.2d 580, 582 (Minn.1988). Appellants did not assert in the district court the substantive argument that David Handy continuously resided at the farm under Minn.Stat. § 256B.15, subd. 4(b), due to the application of the SSCRA. Therefore, we decline to consider the issue for the first time on appeal.

## III.

■ Appellants also argue that the doctrine of res judicata prohibits respondent's claim because the Viva Handy homestead was the subject of two prior administrative hearings during her lifetime in which it was determined that (1) the property was

exempt from a state lien and (2) that the homestead should be considered an exempt asset for purposes of Viva Handy's continued medical assistance eligibility determination.

 The doctrine of res judicata encompasses both claim preclusion and issue preclusion. *Hauser v. Mealey,* 263 N.W.2d 803, 806 (Minn.1978). In order for claim preclusion to apply, there must be: "(1) a final judgment on the merits; (2) a second suit involving the same cause of action; and (3) identical parties or parties in privity." *In re Trusts by Hormel,* 543 N.W.2d 668, 671 (Minn.App.1996). Issue preclusion (collateral estoppel) requires: (1) that the issues be identical; (2) a final judgment on the merits; (3) the estopped party was a party or in privity with a party in the prior matter; and (4) the estopped party had a full and fair opportunity to be heard on the issue. *Roseberg v. Steen,* 363 N.W.2d 102, 106 (Minn.App.1985).

Appellant has not shown that either agency decision meets the requirements for application of either claim preclusion or issue preclusion. Neither of the agency decisions is relevant to determine this matter since both decisions were made while Viva Handy was still alive and neither decision involved Minn.Stat. § 256B.15, subd. 4.

The first agency decision involved the county's authority to file a lien on Viva Handy's land under Minn.Stat. § 514.981, subd. 2(d) (Supp.1995). The second agency decision involved a similar issue: whether the homestead should be excluded from Viva Handy's eligibility for medical assistance determination because the homestead is used as a primary residence by a child "who resided in the home for at least two years immediately before the date of the person's admission to the facility, and who provided care to the person that permitted the person to reside at home rather than in an institution" under Minn.Stat. § 256B.056, subd. (2)(e) (1996). In both instances, the Commissioner of Human Services found that, at the relevant time, Raymond Handy fulfilled the statutory requirements to exempt homestead for purposes of Viva Handy's continued medical assistance eligibility determination.

Neither of the previous decisions dealt with the issue of whether a child or grandchild lived continuously on the land since the date of Viva Handy's institutionalization. Because respondent's current claim involves an issue different from those addressed in the previous agency decisions, the doctrine of res judicata is inapplicable.

## DECISION

Limiting the state's recovery for medical-assistance payments to the nonhomestead assets of Viva Handy's estate under Minn.Stat. § 256B.15, subd. 4, requires appellants to have continuously physically resided in Viva Handy's home, as their primary home, from the date of her institutionalization. Because none of the appellants continuously physically resided in Viva Handy's home from the date of her institutionalization, the district court did not err in granting summary judgment to respondent on its claim against Viva Handy's estate for reimbursement of medical-assistance payments.

**Affirmed.**