# STATE OF MINNESOTA
# IN COURT OF APPEALS
# A23-0210

In re the Estate of: Joanne Mary Ecklund, Decedent.

**Filed November 20, 2023**
**Affirmed**
**Bjorkman, Judge**

Hennepin County District Court
File No. 27-PA-PR-21-1424

Mary F. Moriarty, Hennepin County Attorney, Matthew D. Hough, Assistant County Attorney, Minneapolis, Minnesota (for appellant Hennepin County Human Services)

Keith Ellison, Attorney General, Emily B. Anderson, Assistant Attorney General, St. Paul, Minnesota (for intervenor Commissioner of Human Services)

Susan A. King, Taylor D. Sztainer, Mary Frances Price, Megan J. Renslow, Moss & Barnett, P.A., Minneapolis, Minnesota (for respondent Jerry R. Ecklund)

Considered and decided by Connolly, Presiding Judge; Bjorkman, Judge; and Klaphake, Judge.[*]

## SYLLABUS

The unambiguous language of Minn. Stat. § 256B.15, subd. 2(a) (2022), limits a claim to recover from the estate of a person who received medical assistance to amounts paid for the cost of long-term-care services actually provided to that person.

---

[*] Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

**OPINION**

**BJORKMAN**, Judge

Appellant-county challenges the district court's partial denial of its claim to recover from the estate of a person who received medical assistance for long-term-care services. Appellant argues that the district court erred by interpreting Minn. Stat. § 256B.15, subd. 2(a), to limit recovery to amounts paid for services provided to decedent, asserting that the plain language of the statute permits recovery of the amount of "capitation" payments it made to decedent's managed-care organization (MCO) to cover the cost of decedent's long-term-care services. Intervenor-commissioner supports the county's appeal and argues that federal law requires recovery of capitation payments. We affirm.

**FACTS**

Decedent Joanne Ecklund (decedent) was enrolled in Minnesota's medical-assistance program and received benefits through her MCO, Medica. During decedent's lifetime, the medical-assistance program made capitation payments, which are similar to insurance premiums, to Medica. Following her death in August 2021, appellant Hennepin County Human Services (the county)[1] asserted a claim against the estate under Minn. Stat. § 256B.15 (2022), seeking to recover $66,052.62 as the portion of capitation payments attributable to long-term-care services. The estate's personal representative, respondent Jerry R. Ecklund (Ecklund), opposed the claim. Ecklund argued, in relevant part, that the

---

[1] County human-services agencies administer medical assistance in their respective counties under the supervision of the Minnesota Department of Human Services. Minn. Stat. § 256B.05, subd. 1 (2022).

scope of an estate-recovery claim is limited under Minn. Stat. § 256B.15, subd. 2(a), and does not include capitation payments.

The county and Ecklund filed opposing motions for summary judgment based on stipulated facts. The district court concluded that the county is entitled to recover but that the plain language of Minn. Stat. § 256B.15, subd. 2(a), does not permit recovery of capitation payments made to Medica; it permits recovery of only the amount that Medica paid to providers for services actually provided to decedent, which undisputedly is $8,806.84. Accordingly, the court granted the county partial summary judgment for that amount, denying the remainder of the county's claim.

The county appealed and the Commissioner of Human Services (commissioner) intervened.[2]

**ISSUE**

Does Minn. Stat. § 256B.15, subd. 2(a), limit an estate-recovery claim to amounts paid for long-term-care services actually provided to the decedent?

**ANALYSIS**

Summary judgment is proper if the moving party shows that "there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Minn. R. Civ. P. 56.01. Where, as here, a district court grants summary judgment "based on the application of a statute to undisputed facts, the result is a legal conclusion,"

---

[2] The commissioner may "intervene as a party in any proceeding involving recovery of medical assistance." Minn. Stat. § 256B.15, subd. 9.

3

which we review de novo. *In re Est. of Handy*, 672 N.W.2d 214, 217 (Minn. App. 2003), *rev. denied* (Minn. Feb. 17, 2004).

When interpreting statutes, our role is to identify and effectuate the legislature's intent. Minn. Stat. § 645.16 (2022); *Pfoser v. Harpstead*, 953 N.W.2d 507, 516 (Minn. 2021). We begin by examining the statute's language to determine if it is ambiguous, meaning it "is susceptible to more than one reasonable interpretation." *A.A.A. v. Minn. Dep't of Hum. Servs.*, 832 N.W.2d 816, 819 (Minn. 2013). In determining whether a statute is ambiguous, we consider the whole statute, not just disputed language. *Id.* And we read the statute as it is, without adding language. *Firefighters Union Loc. 4725 v. City of Brainerd*, 934 N.W.2d 101, 109 (Minn. 2019). We construe undefined words and phrases according to their common usage and may consider dictionary definitions. Minn. Stat. § 645.08(1) (2022); *Pfoser*, 953 N.W.2d at 517. But a term's meaning also depends on its context. *Getz v. Peace*, 934 N.W.2d 347, 355 (Minn. 2019). If we discern the legislature's intent from the statute's plain language, we are constrained to apply that unambiguous meaning. *In re Schmalz*, 945 N.W.2d 46, 50 (Minn. 2020).

Minnesota provides "medical assistance" to people whose financial resources are insufficient to meet the cost of necessary healthcare services. Minn. Stat. § 256B.01 (2022); *see also Pfoser*, 953 N.W.2d at 514 (explaining that medical assistance is Minnesota's implementation of Medicaid). Following the death of a medical-assistance recipient, Minn. Stat. § 256B.15 provides for recovery from their estate.[3] This estate-

---

[3] The commissioner argues that federal Medicaid law mandates recovery of capitation payments, citing the requirement that "[a] State plan for medical assistance" provide for

4

recovery statute begins by stating its underlying policy—that those who receive medical assistance "use their own assets to pay their share of the cost of their care." Minn. Stat. § 256B.15, subd. 1(a). To effectuate this policy, the statute requires that, upon the death of a person who received medical assistance, "the amount paid for medical assistance . . . shall be filed as a claim against the estate of the person." *Id.*, subd. 1a(a). Such claims "shall be filed" only if medical assistance was "rendered for" the person under certain circumstances, including if "the person was 55 years of age or older and received medical assistance services that consisted of nursing facility services, home and community-based services, or related hospital and prescription drug benefits." *Id.*, subd. 1a(e)(3). And the legislature specified that estate-recovery claims "shall include only" specified amounts, including "the amount of medical assistance rendered to recipients 55 years of age or older that consisted of nursing facility services, home and community-based services, and related hospital and prescription drug services." *Id.*, subd. 2(a). It is the meaning of this claim-limitation provision that is at issue here.

The parties contend this provision is unambiguous but offer competing interpretations. The county and the commissioner argue that the provision unambiguously means that an estate-recovery claim includes the amount of capitation payments rendered

the state to seek recovery from certain recipients' estates. 42 U.S.C. §§ 1396a(a)(18), 1396p(b)(1)(B)(i) (2018). The Minnesota legislature plainly adopted Minn. Stat. § 256B.15 to comply with this requirement. *See* Minn. Stat. § 256B.22 (2022) (stating that medical-assistance statutes "are intended to comply with" federal Medicaid law). But the commissioner acknowledges that this appeal turns on the interpretation of Minn. Stat. § 256B.15 and, therefore, parallel provisions in federal law are relevant here only if the state statute is ambiguous. *See Schmalz*, 945 N.W.2d at 50.

to an MCO on behalf of a medical-assistance recipient to pay for the cost of the enumerated long-term-care services. They urge us to focus on the phrase "medical assistance," which is defined as "payment of part or all of the cost of the care and services identified [as covered services] in section 256B.0625, for eligible individuals whose income and resources are insufficient to meet all of this cost." Minn. Stat. § 256B.02, subd. 8 (2022); *see* Minn. Stat. § 256B.0625 (2022) (listing covered services). They assert that this definition includes capitation payments, advancing similar but distinct justifications. The county emphasizes the "payment" part of the definition, arguing that, for people like decedent who receive medical assistance through an MCO, the state renders "payment" for covered services by making capitation payments to the MCO. The commissioner emphasizes the "cost" part of the definition, arguing that capitation payments are "the cost of [covered] services." We reject the county and the commissioner's interpretation for two reasons.

First, the term "capitation" is conspicuously absent not only from the claim-limitation provision at issue but from the estate-recovery statute as a whole. *See generally* Minn. Stat. § 256B.15. By contrast, the legislature uses the term repeatedly in other medical-assistance statutes. For example, it mandates that the commissioner develop "capitation rates" and details standards for doing so. Minn. Stat. § 256B.6928, subd. 3 (2022). It requires that "capitation rates" or "capitation payments" be adjusted to account for various services being included or excluded from covered services. Minn. Stat. § 256B.0625, subds. 5m(d), 17a(b), 52(a). And it defines the term "prepaid health plan" in terms of receipt of "a capitation payment." Minn. Stat. § 256B.02, subd. 13 (2022). In

6

short, the legislature knows how to include capitation payments in a statute but chose not to do so in the estate-recovery statute. Under these circumstances, the "black-letter rule" prohibiting us from adding language to a statute "has special force." *Firefighters Union*, 934 N.W.2d at 109.

Second, the claim-limitation provision's use of the phrase "medical assistance" does not bridge this gap. As we noted above, "medical assistance" refers to payment of the cost of covered services. Minn. Stat. § 256B.02, subd. 8. The term "capitation" refers to a similar sounding concept—"a method of payment for health services that involves a monthly per person rate paid on a prospective basis to a health plan." Minn. R. 9500.1451, subp. 4 (2021). But the concepts are distinct.

The state makes capitation payments to an MCO based on rates that anticipate the cost of covered services by considering recent years' price and utilization data from the "medical assistance population." Minn. Stat. § 256B.6928, subd. 3(a)(1)-(2), (b). The rate also includes a "nonbenefit component" to cover the MCO's operational expenses. *Id.*, subd. 3(a)(3). In exchange for capitation payments, the MCO takes on the "financial risk" of providing "medical assistance services." Minn. Stat. § 256B.02, subd. 13; *see Getz*, 934 N.W.2d at 356 (describing this "exchange"). The MCO manages this risk by negotiating with healthcare providers to secure discounts for the cost of covered services that they provide to medical-assistance recipients. *See Getz*, 934 N.W.2d at 356 & n.9. As a result, depending on the extent of covered services that a recipient actually receives and the extent of discounts that the MCO negotiates with providers, the amount the MCO receives in

capitation for the recipient may be more or less than the amount it pays for covered services that the recipient actually receives.[4]

In short, a capitation payment enables and even requires an MCO to pay the cost of covered services, but it is not itself the cost of covered services or payment of that cost. As such, it is not medical assistance for purposes of recovery from a recipient's estate. Accordingly, the county and the commissioner's interpretation of the limitation provision as allowing recovery of capitation payments is unreasonable.

Ecklund advances a different interpretation of the claim-limitation provision—that an estate-recovery claim is limited to the amount paid for the cost of the enumerated long-term-care services that were actually provided to the medical-assistance recipient. He contends the phrase "rendered to recipients" requires this interpretation. We agree.

The term "render" means to "give" or "provide." *The American Heritage Dictionary of the English Language* 1487 (5th ed. 2011). The phrase "rendered to recipients" modifies the phrase "medical assistance" because it immediately follows that phrase. *In re Est. of Butler*, 803 N.W.2d 393, 397 (Minn. 2011) (stating that "a qualifying phrase ordinarily modifies only the noun or phrase it immediately follows"). The two phrases together refer to *payment of the cost of covered services provided to recipients*. This phrase, in turn, could mean that (1) the referenced payment was provided to recipients directly, (2) the referenced payment was provided to recipients indirectly, or (3) the

---

[4] For example, in this case Medica received $66,052.62 in capitation payments for decedent's long-term-care services but paid only $8,806.84 to providers for services that decedent received.

8

referenced services were provided to recipients. Only one of these three interpretations is reasonable.

*Payment of the cost of covered services provided to recipients* cannot mean that the payment was provided directly to the person receiving the covered services because medical-assistance payments are not made directly to the recipient; they are made "to the vendor." Minn. Stat. § 256B.03, subd. 1 (2022). Nor are we persuaded that the phrase refers to indirect payment on the recipient's behalf because it would mean that medical assistance, which encompasses concepts of payment and services, is "rendered to" a recipient even if neither payment nor services were actually provided to the recipient. This means that the only reasonable interpretation of the phrase "medical assistance rendered to recipients" refers to the services part of "medical assistance," meaning covered services that were provided to the recipient.

Consideration of the rest of the estate-recovery statute convinces us that this services-oriented reading of Minn. Stat. § 256B.15, subd. 2(a), is the only reasonable one. *See Getz*, 934 N.W.2d at 355 (requiring consideration of statutory context in plain-language analysis). First, the latter portion of that provision, referring to specific long-term-care services, makes more sense when "medical assistance" refers to services. It is undisputed that actuarial analysis can define the portion of capitation payments attributable to anticipated use of particular services; as a result, interpreting the provision to refer to "medical assistance [payments] . . . that consisted of" the listed long-term-care services sounds odd but may make sense. But interpreting the provision to refer instead to services actually provided to a recipient—specifically, "medical assistance [services] . . . that

9

consisted of" the listed long-term-care services—affords a more natural reading and a clearer and more concrete rubric. *See Krueger v. Zeman Constr. Co.*, 781 N.W.2d 858, 861 (Minn. 2010) (stating that courts construe statutory language words and phrases "according to their most natural and obvious usage" (quotation omitted)).

Moreover, the estate-recovery statute's claim-filing requirement only applies "if medical assistance was rendered for . . . [a] person [who] was 55 years of age or older and *received medical assistance services* that consisted of [long-term-care services]." Minn. Stat. § 256B.15, subd. 1a(e)(3) (emphasis added). This is consistent with the legislature's articulated policy that the estate-recovery statute does not call for maximizing recovery; it calls for equitable contribution for services received by collecting from medical-assistance recipients' estate "*their share* of the cost of their care." Minn. Stat. § 256B.15, subd. 1(a) (emphasis added); *see In re Est. of Turner*, 391 N.W.2d 767, 770 (Minn. 1986) (stating that estate-recovery statute creates a "system whereby money paid to qualified individuals for health care purposes may be recovered and reused to help other similarly situated persons").

In sum, based on our careful consideration of the estate-recovery statute as a whole, we conclude that the only reasonable interpretation of Minn. Stat. § 256B.15, subd. 2(a), is that an estate-recovery claim is limited to the amount paid for the cost of covered services that were actually provided to the person receiving medical assistance. The claim does not include capitation payments. In light of this conclusion, we decline to address the parties' arguments regarding extrinsic factors like agency guidance, parallel federal provisions,

10

legislative history, and the consequences of this interpretation.[5] *See Schmalz*, 945 N.W.2d at 50 (stating that courts "will not disregard a statute's clear language to pursue the spirit of the law" (quotation omitted)).

## DECISION

Because Minn. Stat. § 256B.15, subd. 2(a), limits an estate-recovery claim to the amount paid for long-term-care services actually provided to a medical-assistance recipient, the district court did not err by applying that unambiguous meaning and denying the portion of the county's claim that exceeds that amount.

**Affirmed.**

---

[5] All three parties advance arguments as to the consequences of the competing statutory interpretations. While we decline to substantively address those arguments, we note that the commissioner's concern that our interpretation of Minn. Stat. § 256B.15, subd. 2(a), places Minnesota out of compliance with federal law is, as she acknowledges, a matter between the state and the federal government, not the state and Ecklund. And if the legislature shares the commissioner's concerns, it has the power to amend the statute accordingly. *See State v. Khalil*, 956 N.W.2d 627, 642 (Minn. 2021) (stating that, if legislature intends something other than court's plain-language interpretation, it may reexamine and amend the statute); *see also Getz*, 934 N.W.2d at 357 (stating if a statute "needs revision in order to make it embody a more sound public policy, the Legislature, not the judiciary, must be the reviser" (quotation omitted)).